

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00235-CV

IN RE E.C., F.C., T.C., AND                             RELATORS
CLEBURNE METAL WORKS, LLC
D/B/A CLEBURNE SHEET METAL

------------

ORIGINAL PROCEEDING
TRIAL COURT NO. 96-268349-13

------------

## OPINION

------------

### I. INTRODUCTION

Relators E.C., F.C., T.C., and Cleburne Metal Works, LLC d/b/a Cleburne

Sheet Metal filed a petition for writ of mandamus complaining that the trial court

had abused its discretion by overruling their assertions of confidentiality and

privilege and ordering them to produce documents from the file of Dr. Dick Miller,

a clinical psychologist who was hired as a consultant by E.C's defense attorneys

in his juvenile proceeding. We hold that Dr. Miller's file and opinions are not

confidential and that any privileged information has been waived through voluntary disclosure. Accordingly, we will deny the petition.

## II. RELEVANT BACKGROUND[1]

Sixteen-year-old E.C. was involved in an automobile accident late one night in June 2013 after he lost control of the truck that he was driving while intoxicated. Four people died and a number of others sustained injuries. E.C. hired defense attorneys "[w]ithin hours of the accident," and the defense attorneys then retained Dr. Miller as a consultant. According to a document filed by Real Parties in Interest K.M. and A.M., individually and as next friends for L.M., a minor (collectively, RPIs), Dr. Miller spent approximately fifty hours treating E.C. and his parents after the accident.

In September 2013, the State filed a petition alleging that E.C. had engaged in delinquent conduct by committing four violations of penal code section 49.08 and two violations of penal code section 49.07. *See* Tex. Penal Code Ann. §§ 49.07 (intoxication assault), 49.08 (intoxication manslaughter) (West 2011). According to RPIs, E.C. ultimately "pled guilty" to four counts of intoxication manslaughter. Although initially hired as a consultant, Dr. Miller testified at the subsequent disposition hearing and "freely discussed the case, his treatment of [E.C.], and his role in the defense." The juvenile court sentenced E.C. to ten years' probation.

---

[1]All facts contained herein are taken from documents within the mandamus record. We do not attempt to correct any terminology that may be inconsistent with the Juvenile Justice Code.

2

A civil lawsuit was filed against Relators in September 2013 to recover damages for injuries sustained as a result of Relators' alleged negligence and gross negligence in connection with the accident. Other parties intervened in the coming months, including RPIs. Relators have settled all of the claims alleged by all of the plaintiffs and intervenors, except for those of RPIs.

In March 2014, RPIs issued to Dr. Miller (1) a subpoena for production of documents and (2) a notice of deposition by written questions, both seeking Dr. Miller's records pertaining to E.C.'s juvenile proceeding. Relators responded by filing motions for a protective order. RPIs later noticed Dr. Miller's deposition, which Relators moved to quash. Relators argued in briefing that Dr. Miller's file and his thoughts and opinions generated as part of E.C.'s defense in the juvenile proceeding are confidential under family code sections 51.13(b) and 58.005; privileged under the work-product, attorney-client, and mental-health privileges; and irrelevant.

The trial court conducted a hearing on Relators' motions and signed an order on May 29, 2014,

> (1) finding that family code sections 51.13(b) and 58.005(a) were inapplicable to the records and testimony of Dr. Miller;
>
> (2) finding that Relators' claims of work-product privilege, attorney-client privilege, and mental-health privilege had been waived;
>
> (3) granting Relators' motions as to certain records; and
>
> (4) ordering Relators to submit the rest of Dr. Miller's records for an in-camera inspection.

3

Relators filed a motion for rehearing, asking the trial court to perform an in-camera review of Dr. Miller's file in order to assess their assertions of confidentiality and privilege, and E.C.'s defense counsel submitted Dr. Miller's file to the trial court for an in-camera inspection. On July 22, 2014, the trial court signed an order requiring Relators to produce certain documents from Dr. Miller's file (identified by Bates numbers) within fourteen days of the order. Relators filed this mandamus petition, and we granted their emergency motion to stay the May 29 and July 22, 2014 orders pending our consideration of the petition.

## III. STANDARD OF REVIEW

Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding).

## IV. CONFIDENTIALITY ARGUMENTS

Relying primarily on family code sections 51.13(b) and 58.005(a), Relators argue that Dr. Miller's file and opinions regarding E.C.'s juvenile case are confidential and not discoverable in a subsequent civil proceeding such as this one. *See* Tex. Fam. Code Ann. §§ 51.13(b), 58.005(a) (West 2014). They contend that juvenile proceedings are treated differently than adult criminal

4

proceedings and civil proceedings, that all records and files of the juvenile in conjunction with a juvenile proceeding are confidential, and that "[t]here is only one conceivable exception that could allow disclosure (or at least discovery) of Dr. Miller's opinions here: if [Relators] were to designate Dr. Miller as their own retained testifying expert *in this civil proceeding*," which has not happened. Relators' confidentiality arguments therefore require us to construe family code sections 51.13(b) and 58.005(a).

Our primary objective when construing a statute is to ascertain and give effect to the legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). Particularly important here is that we must consider the words in context, not in isolation. *See Jaster v. Comet II Constr., Inc.*, No. 12-0804, 2014 WL 2994503, at *4 (Tex. July 3, 2014); *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2013) (providing that words and phrases shall be read in context). Thus, in determining the meaning of a statue, a court must consider the entire act, its nature and object, and the consequences that would follow from each construction. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991). A court should not assign a meaning to a statutory provision that would be inconsistent with other provisions of the same act, even though it might be susceptible to such a construction standing alone. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). Indeed, "[i]nterpretations of statutes

5

which would produce absurd results are to be avoided." *Sharp*, 815 S.W.2d at 249. Accordingly, we begin our analysis with the statute's words and then consider the apparent meaning of those words within their context. Statutory construction presents a question of law that we review de novo. *Shumake*, 199 S.W.3d at 284.

### A. Family Code Section 51.13(b)

The Juvenile Justice Code is found in Title 3 of the family code. Chapter 51 includes a wide range of general provisions, including such topics as jurisdiction, waiver of rights, and polygraph examinations. Tex. Fam. Code Ann. §§ 51.04, .09, .151 (West 2014). Section 51.13 address the "[e]ffect" of an adjudication or disposition. *Id.* § 51.13. In particular, subsection (a) provides that an order of adjudication or disposition is not a conviction of a crime and does not disqualify a child in any civil service application or appointment, subsection (c) prohibits a child from being committed or transferred to a penal institution or other facility that is used primarily to execute the sentences of persons convicted of a crime, and subsection (d) explains when a particular adjudication is a final felony conviction for purposes of the habitual offender statute. *Id.* § 51.13 (a), (c), (d). Section 51.13(b) provides as follows:

> (b)    The adjudication or disposition of a child or evidence adduced in a hearing under this title may be used only in subsequent:
>
> > (1)    proceedings under this title in which the child is a party;
> >
> > (2)    sentencing proceedings in criminal court against the child to the extent permitted by the Texas Code of Criminal Procedure, 1965; or

6

> (3)  civil commitment proceedings under Chapter 841, Health and Safety Code.

*Id.* § 51.13(b).  Subsection (b) is appropriately found in section 51.13 because it identifies one "[e]ffect" of an adjudication or disposition; specifically, when (1) the adjudication or disposition of a child or (2) evidence adduced in a hearing under this title (3) may be *used*:  in a subsequent (i) *proceeding* under this title in which the child is a party, (ii) sentencing *proceeding* in criminal court against the child as permitted, or (iii) civil commitment *proceeding.  Id.*

There are several reasons why section 51.13(b) has no application here. First, RPIs are not seeking to use E.C.'s adjudication, his disposition, or any evidence adduced at a hearing under this title.  They are seeking to discover Dr. Miller's *file and opinions.*  Dr. Miller's file and opinions are not an adjudication, a disposition, or evidence adduced at a hearing under this title.  Section 51.13(b) is therefore inapposite.

To the extent that Relators conflate Dr. Miller's file and opinions with evidence adduced at a hearing—because his testimony reflected his opinions and various matters contained in his file—section 51.13(b) nonetheless does not render Dr. Miller's file confidential.  A proper construction of section 51.13(b) cannot ignore that the legislature chose the verb "used" and followed it by setting out three different subsequent "proceedings."  *Id.*  Statutory construction rules "require that the words employed by the legislature shall be taken in their ordinary and popular acceptation, unless technical terms are used, or unless it clearly appears from the context that the words used were not intended to be

7

understood in their ordinary and popular signification." *Engelking v. Von Wamel*, 26 Tex. 469, 469 (1863). The legislature did not define the word "used," but because three subsequent "proceedings" are immediately identified thereafter, we can gather that the legislature intended for the word "used" to be construed in its technical sense: specifically, prior adjudications, dispositions, and evidence adduced in a hearing under the Juvenile Justice Code are "used" when they are *admitted* for some purpose. *See, e.g.*, George E. Dix and John M. Schmolesky, 43A Texas Practice, Criminal Practice and Procedure § 46:31 (citing section 51.13(b) and discussing the *admissibility* of juvenile adjudications in subsequent criminal prosecutions). Thus, it clearly appears from the context of section 51.13(b) that the intent of the legislature was to limit the formal instances, or "proceedings," in which an adjudication, a disposition, or evidence adduced at a hearing under the Juvenile Justice Code could be admitted, or "used," for whatever purpose it may be.

RPIs here are not attempting to "use[]" Dr. Miller's file because they are not attempting to admit it in some proceeding for some purpose; rather, RPIs are merely trying to *discover* it pretrial. It is well understood in the civil context that there is a fundamental difference between the discoverability of evidence and the admissibility of evidence at trial or some proceeding.[2] *See, e.g., In re Pilgrim's Pride Corp.*, 204 S.W.3d 831, 835 n.8 (Tex. App.—Texarkana 2006, orig.

---

[2]Relators implicitly acknowledge this distinction when they state disjunctively that Dr. Miller's file is not "discoverable, pursuable *or* usable." [Emphasis added.]

proceeding [mand. dism'd]) ("Relevance should not be confused with admissibility. Admissibility is not required for information to be discoverable."). Relators argue that this construction "is inefficient because it allows discovery of information and materials which cannot be used in the civil proceeding." However, an inefficient result is not analogous to an absurd result, which is what we seek to avoid when construing a statute. Moreover, the rules of civil procedure contemplate some level of inefficiency. *See* Tex. R. Civ. P. 192.3(a) (stating that information that might not be admissible is nevertheless discoverable if the information sought appears reasonably calculated to lead to the discovery of admissible evidence). Accordingly, even if we assume that Dr. Miller's file and opinions somehow constitute evidence adduced at a hearing, section 51.13(b) is inapposite because RPIs are not seeking to "use[]" Dr. Miller's file.

### B. Family Code Section 58.005(a)

Relators' arguments implicating section 58.005(a) founder for a related, context-deficient reason. Section 58.005(a), entitled "Confidentiality of Records," provides as follows:

> (a) *Records and files* concerning a child, including personally identifiable information, and information obtained for the purpose of diagnosis, examination, evaluation, or treatment or for making a referral for treatment of a child by a public or private agency or institution providing supervision of a child by arrangement of the juvenile court or having custody of the child under order of the juvenile court *may be disclosed only to*:
>
> > (1) the professional staff or consultants of the agency or institution;

9

(2)    the judge, probation officers, and professional staff or consultants of the juvenile court;

(3)    an attorney for the child;

(4)    a governmental agency if the disclosure is required or authorized by law;

(5)    a person or entity to whom the child is referred for treatment or services if the agency or institution disclosing the information has entered into a written confidentiality agreement with the person or entity regarding the protection of the disclosed information;

(6)    the Texas Department of Criminal Justice and the Texas Juvenile Probation Commission for the purpose of maintaining statistical records of recidivism and for diagnosis and classification; or

(7)    with leave of the juvenile court, any other person, agency, or institution having a legitimate interest in the proceeding or in the work of the court.

Tex. Fam. Code Ann. § 58.005(a) (emphasis added). Relators broadly construe the terms "[r]ecords and files," as that term is used in the statute, to refer to all records and files *in existence*, including the files of a person hired as a consultant by defense counsel, like Dr. Miller. But Relators perform no statutory-construction analysis to support their proposed interpretation; they merely cite section 58.005(a), construe it in isolation from the remainder of the chapter, and argue that the statute means what they say it does. A proper construction demonstrates that the legislature had something else in mind when it used the words "[r]ecords and files."

Chapter 58 of the Juvenile Justice Code contains many statutes addressing numerous aspects of juvenile records, including who must keep records, what type of information must be kept, and who can access records. *Id.* §§ 58.001–.405 (West 2014). Subchapter A of chapter 58 is actually titled "Records." Of the fourteen statutes contained in that subchapter, only two define the term "records." *See id.* §§ 58.0051 ("'Educational records' means records in the possession of a primary or secondary educational institution that contain information relating to a student . . . ."), 58.0071(a)(2) ("'Physical records and files' include entries in a computer file or information on microfilm, microfiche, or any other electronic storage media."). The other statutes in subchapter A simply refer to "records," "files," or both, including section 58.005(a). Nonetheless, we can gain insight into what the legislature meant when it used the words "[r]ecords and files" in section 58.005(a) by examining the context in which the same terms are used throughout the subchapter. For example:

•section 58.003(g)(1) provides that on entry of a sealing order, "all *law enforcement*, *prosecuting attorney*, *clerk of court*, and *juvenile court* records ordered sealed shall be sent" timely to the court that issued the order. *Id.* § 58.003(g)(1) (emphasis added).

•section 58.003(m) provides in part that "[o]n request of the Department of Public Safety, a juvenile court shall reopen and allow the department to inspect the files and records of the *juvenile court*." *Id.* § 58.003(m) (emphasis added).

•section 58.007(b) provides that "the records and files of a *juvenile court*, a *clerk of court*, a *juvenile probation department*, or a *prosecuting attorney* relating to a child who is a party to a proceeding under this title may be inspected or copied only by" various individuals or entities. *Id.* § 58.007(b) (emphasis added).

11

•section 58.007(c) addresses "*law enforcement* records and files concerning a child." *Id.* § 58.007(c) (emphasis added).

•section 58.007(g) permits a *juvenile court* that is in possession of the record of a defendant's adjudication to provide the record to a prosecuting attorney. *Id.* § 58.007(g).

•section 58.007(i) addresses when a *juvenile probation department* may release information contained in its records without leave of the juvenile court. *Id.* § 58.007(i).

•section 58.0071(c) identifies who may authorize the destruction of physical records and files relating to a closed juvenile case: "a juvenile board in relation to the records and files in the possession of the *juvenile probation department*," "the head of a law enforcement agency in relation to the records and files in the possession of *the agency*," and "a prosecuting attorney in relation to the records and files in the possession of the *prosecuting attorney's office*." *Id.* § 58.0071(c) (emphasis added).

The pattern here is apparent: when using the undefined terms "records" and "files," the legislature is referring to records and files in the possession of or belonging to individuals or entities closely associated with the juvenile court system—a juvenile court, a prosecuting attorney, a court clerk, or a law enforcement agency. When section 58.005(a) is read in context, the "[r]ecords and files concerning a child" are those records and files in the possession of or belonging to the same individuals or entities identified throughout the subchapter. There is absolutely nothing in chapter 58 to indicate that unlike the other statutes contained therein, the legislature intended the terms "[r]ecords and files" to refer to all records and files in existence everywhere, including the records and files of a person hired as a consultant by defense counsel in a juvenile proceeding. While the terms might be susceptible to that construction when standing alone, there can be no doubt that such a construction is inconsistent with other

12

provisions of the chapter and the intent of the legislature. *See Needham*, 82 S.W.3d at 318. Accordingly, Dr. Miller's files are not "[r]ecords and files" as that term is used in section 58.005(a), and like section 51.13(b), the statute is inapposite to the discovery dispute in this case.

We hold that the trial court did not abuse its discretion by finding that family code sections 51.13(b) and 58.005(a) were inapplicable to the records and testimony of Dr. Miller. We overrule all of Relators' confidentiality arguments that are premised upon the family code.

## V. PRIVILEGE ARGUMENTS

Relators argue that Dr. Miller's file and opinions are protected by the work-product, attorney-client, and mental-health privileges. At the hearing on Relators' motions for protection, RPIs argued that to the extent Dr. Miller's file and opinions were privileged, the privileges had been waived because Dr. Miller testified about his opinions in open court at E.C.'s disposition hearing and gave several televised interviews during which he discussed his opinions. RPIs argued similarly in their response. The trial court agreed, specifically finding in its May 29, 2014 order that Relators had waived their claims of work-product privilege, attorney-client privilege, and mental-health privilege as to Dr. Miller's file and opinions. In light of the trial court's order finding waiver, we presume (without deciding) that Dr. Miller's file and opinions are privileged and proceed to consider whether the privileges have been waived.

13

Privileges may be waived by voluntarily disclosing or consenting to the disclosure of any significant part of the privileged matter, unless such disclosure itself is privileged. Tex. R. Evid. 511(1). Rule of evidence 511 begins by stating, "A person upon whom *these rules confer a privilege* against disclosure *waives* the privilege . . . ." *Id.* (emphasis added). Thus, rule 511 applies to each of Relators' claimed privileges, including the mental-health privilege, which is found in the immediately preceding rule. *See* Tex. R. Evid. 510. The burden of proof to establish the existence of a privilege rests on the one asserting it. *Jordan v. Court of Appeals for the Fourth Supreme Judicial Dist.*, 701 S.W.2d 644, 648–49 (Tex. 1985).

We do not have the record from E.C.'s disposition hearing, nor have we requested to review the documents that the trial court ordered Relators to produce, but we may consider whether waiver has occurred here because there is no dispute between the parties that Dr. Miller (1) testified at the disposition hearing and (2) disclosed a significant amount of information that would have otherwise been protected by the attorney-client, work-product, or mental-health privileges.[3] *See* Tex. R. App. P. 38.1(g) "(In a civil case, the court will accept as true the facts stated unless another party contradicts them"). Considering that we are presuming that Dr. Miller's file is privileged, the question then is whether

---

[3]According to RPIs, Dr. Miller testified that E.C.'s killing of four and injuring others was a product of "affluenza," a mental condition that prevented him from linking his behavior with consequences. RPIs set out additional testimony of Dr. Miller, but we do not repeat it here.

Dr. Miller's testifying at E.C.'s disposition hearing about matters that would have otherwise been privileged constituted a waiver of Relators' claimed privileges.

This court has held that a party waived privileged information by previously disclosing it in open court. *See Stroud Oil Props., Inc. v. Henderson*, No. 02-03-00003-CV, 2003 WL 21404820, at *3 (Tex. App.—Fort Worth June 19, 2003, pet. denied) (mem. op.). We set out the following facts in *Stroud Oil Properties*:

> Appellants are plaintiffs and counter-defendants in a lawsuit against Appellees in Brazos County arising out of a dispute over an oil and gas development agreement. At the same time as the Brazos County suit was pending, Appellees apparently had an internal disagreement about how to operate their business. The dispute was focused primarily at how Appellees could best respond to Appellants' suit in Brazos County.

> Appellees filed suit in Tarrant County to resolve their dispute. Throughout the suit, Appellees allegedly disclosed privileged information in open court. Appellees settled the suit and filed a rule 76a motion to seal the record in an effort to prevent the privileged information from becoming public. After a hearing, the trial court sealed the record.

> Appellants learned of the suit in Tarrant County and attempted to gain access to the records claiming that the suit was held in open court and had to have some relationship with the suit in Brazos County. When Appellants discovered that the court sealed the records, Appellants intervened in the case in an attempt to unseal the record. . . . After [a] hearing, the trial court ruled to keep the record sealed, and Appellants appealed.

*Id.* at *1. We held that "Appellees waived any alleged privileged information when they voluntarily disclosed it in open court." *Id.* at *3.

*Stroud Oil Properties* is on point. The trial court could have reasonably concluded that E.C. waived any privilege as to Dr. Miller's file or opinions by eliciting his testimony on those matters in open court at the prior disposition

15

hearing. *See* Tex. R. Evid. 511; *see also In re Ortuno*, No. 14-08-00457-CV, 2008 WL 2855028, at *2 (Tex. App.—Houston [14th Dist.] July 24, 2008, orig. proceeding [mand. denied]) ("A party waives a privilege if it voluntarily discloses the privileged information to an open court."); *see also Nat'l Polymer Prods., Inc. v. Borg-Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981) (beginning analysis "with the well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use"); *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 532–35 (N.D. Ill. 2003) (holding that party had waived attorney-client and work-product privileges by revealing protected information in earlier mandamus petition to circuit court).

Relators argue that Dr. Miller's testifying at the disposition hearing did not waive any privileges because a privilege is not waived by disclosure if the disclosure itself is privileged, and under family code section 51.13(b), "testimony at a juvenile proceeding is and remains confidential," and there is no exception for subsequent civil proceedings. *See* Tex. R. Evid. 511; Tex. Fam. Code Ann. § 51.13(b). We already discussed section 51.13(b) above, and that analysis is equally applicable here. Section 51.13(b) does not state that "testimony at a juvenile proceeding is and remains confidential"; it identifies subsequent "proceedings" in which evidence adduced at a juvenile trial may be "used." We reject Relators' broad interpretation of section 51.13(b) as some kind of a

16

catchall, blanket provision that renders juvenile proceedings confidential in every potential context imaginable, aside from the three set out in the statute.

Relators argue that *Dr. Miller* could not have waived the privileges by testifying at E.C.'s disposition hearing because only *a party* could have waived the privileges. *See* Tex. R. Evid. 511; *In re Gen. Agents Ins. Co. of Am., Inc.*, 224 S.W.3d 806, 814 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) ("A client unquestionably has the right to waive the attorney-client privilege."). Relators included in the mandamus record an affidavit signed by F.C. stating that he did not authorize Dr. Miller to speak publicly about his work with E.C. However, while *F.C.* may not have consented to Dr. Miller's disclosure of otherwise privileged information, *E.C.* certainly did when he called Dr. Miller to testify at the disposition hearing.

Relators have not met their burden to show that the claimed privileges have not been waived. Accordingly, we hold that the trial court did not abuse its discretion by finding that Relators' claims of work-product privilege, attorney-client privilege, and mental-health privilege had been waived.[4] We overrule Relators' privilege arguments.

---

[4]Relators argue that the relevance exception contained in rule of evidence 510(d)(5) does not apply to except Dr. Miller's file and opinions from the mental-health privilege. *See* Tex. R. Evid. 510(d)(5). We need not reach this argument because we presumed that Dr. Miller's file is protected by the mental-health privilege (and that the exception therefore did not apply) but concluded that the privilege had been waived. *See* Tex. R. App. P. 47.1.

### VI. Conclusion

We deny relators' petition for writ of mandamus and lift the stay previously ordered by this court on August 4, 2014.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  September 16, 2014