

## NUMBER 13-22-00143-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

JOE A. MEADORS,                                         **Appellant,**

**v.**

MICHAEL MAKOWSKI AND
DONNA MAKOWSKI,                                   **Appellees.**

### On appeal from the 414th District Court
### of McLennan County, Texas.

## OPINION

### Before Justices Benavides, Hinojosa, and Tijerina
### Opinion by Justice Benavides

In this debt collection dispute, the parties ask us to determine the meaning of the term "rendition." *See* Tex. Civ. Prac. & Rem. Code Ann. § 34.001(a) ("If a writ of execution is not issued within 10 years after the rendition of a judgment . . . , the judgment is dormant and execution may not be issued on the judgment unless it is revived.").

In December of 2005, the trial court signed a default judgment against appellant, Joe A. Meadors, and in favor of appellees, Michael Makowski and Donna Makowski.[1] In May of 2006, a final judgment was signed, disposing of the Makowskis' remaining claims against other parties. In March of 2016, the Makowskis requested issuance of a writ of execution to collect on their judgment against Meadors. This, Meadors contends, was too little, too late, and in 2021, he sought declaratory relief, claiming that the underlying judgment was dormant, and thus, uncollectable. The Makowskis counterclaimed seeking, essentially, inverse relief, and both parties filed motions for summary judgment. The trial court granted the Makowskis' motion for summary judgment and denied Meadors's. On appeal, Meadors asserts that the trial court erred by misinterpreting § 34.001(a) of the civil practice and remedies code when it ruled on the motions for summary judgment. We affirm.

## I.    BACKGROUND[2]

We begin by discussing the facts outlined above in more depth. On December 16, 2005, the trial court signed a default "FINAL JUDGMENT" against Meadors, awarding the Makowskis both actual and exemplary damages in the total amount of $156,899.99, along with post-judgment interest. However, at the time this judgment was signed, the Makowskis still had claims pending against three co-defendants: the Retlaw Group, Pierre

---

[1] In his brief, counsel for the Makowskis informed this Court that Donna Makowski passed away on March 12, 2022. As suggested by counsel, we shall resolve this appeal as though she was still living. *See* TEX. R. APP. P. 7.1(a)(1).

[2] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

A. Dionnu, and the Family Fun Center of Waco, Inc.

On December 27, 2005, the Makowskis non-suited their claims against the Retlaw Group and Dionnu. On May 31, 2006, the trial court signed a default "FINAL JUDGMENT" against the Family Fun Center of Waco, Inc. Both the December 16, 2005 and the May 31, 2006 orders contained Mother Hubbard clauses and "order[ed] execution to issue."

On March 24, 2016, the Makowskis requested issuance of a writ of execution on Meadors. On May 2, 2016, a McClennan County constable returned the writ to the court nulla bona.[3]

In 2021, Meadors sought a declaratory judgment prohibiting the Makowskis from enforcing the 2005 judgment because it was dormant. The Makowskis counterclaimed, seeking a declaratory judgment that they had timely renewed their judgment against Meadors and that the judgment was presently enforceable. On December 12, 2021, the Makowskis moved for summary judgment on their declaratory judgment claim. On January 3, 2022, Meadors also filed a motion for summary judgment on his declaratory judgment claim, alleging that judgment was originally rendered against him on December 16, 2005, and that it therefore became dormant in December of 2015. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a). He also alleged that the Makowskis took no action to revive it during the two years immediately following its dormancy. *See id.* § 31.006. Attached to Meadors's motion was the writ of execution from 2016 which listed the judgment date as "December 16, 2005."

---

[3] "Meaning 'no goods' in Latin, nulla bona is a form of return by a sheriff or constable upon an execution when the judgment debtor has no seizable property within the jurisdiction." *Gillet v. ZUPT, LLC*, 523 S.W.3d 749, 754 n.2 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Nulla Bona*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

The court granted the Makowskis' motion for summary judgment and denied Meadors's motion. This appeal followed.

## II.  STANDARD OF REVIEW & APPLICABLE LAW

We review de novo a trial court's decision to grant summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). "Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002). When, as here, the parties file competing motions for summary judgment, and the trial court granted one while denying the other, "we review the summary judgment evidence presented by both sides and render the judgment that the trial court should have rendered." *See Trial v. Dragon*, 593 S.W.3d 313, 316–17 (Tex. 2019).

Judgments obtained are generally enforceable by execution "or other appropriate process." TEX. R. CIV. P. 621. However, "[i]f a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived." TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a). "A dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant." *Id.* § 31.006.

## III.  ANALYSIS

Here, the parties do not dispute the facts. Instead, they dispute what constitutes "rendition" for purposes of § 34.001. *See id.* § 34.001(a). Meadors argues that the partial judgment against him in December 2005 was a "rendition," and thus, the writ of execution

4

obtained by the Makowskis in March of 2016 was untimely. The Makowskis counter that "rendition" did not occur until the judgment became final in May of 2006, and consequently, the 2016 writ was timely.

We review issues of statutory interpretation de novo. *Metro. Transit Auth. of Harris Cnty. v. Carr*, 616 S.W.3d 659, 660 (Tex. App.—Houston [14th Dist.] 2021, no pet.). When a statute contains an undefined term, we typically give the term its ordinary meaning. *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016). "However, we will not give an undefined term a meaning that is out of harmony or inconsistent with other terms in the statute." *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180 (Tex. 2013). "[I]f a different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *In re Hall*, 286 S.W.3d 925, 929 (Tex. 2009) (orig. proceeding). "Therefore, when an undefined term has multiple common meanings, the definition most consistent within the context of the statute's scheme applies." *$1,760.00 in U.S. Currency*, 406 S.W.3d at 180–81.

The term "rendition" is not defined in § 34.001. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 34.001. To determine a term's common and ordinary meaning, "we look to a wide variety of sources, including dictionary definitions, treatises and commentaries, . . . prior constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure." *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014).

Black's Law Dictionary defines the term "rendition" as "[t]he action of making, delivering, or giving out, such as a legal decision; esp., the filing of a court order with the

5

clerk of court." *Rendition*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Supreme Court of Texas has previously explained that the "rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made." *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (per curiam). A trial court's pronouncement does not "constitute a rendition of judgment if essential issues remain pending when the pronouncement is made." *McShane v. McShane*, 556 S.W.3d 436, 442 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *see In re L.A.-K*, 596 S.W.3d 387, 394 (Tex. App.—El Paso 2020, no pet.).

The supreme court has also construed the word "rendition" as used in another provision of the civil practice and remedies code to mean the signing of a final judgment. *See Hood v. Amarillo Nat'l Bank*, 815 S.W.2d 545, 548 (Tex. 1991) (per curiam). Section 65.014(a) provides that "an injunction to stay execution of a valid judgment may not be granted more than one year after the date on which the judgment was rendered," unless the debtor is able to establish fraud or false promises or some other "equitable matter or defense arises after the rendition of the judgment." TEX. CIV. PRAC. & REM. CODE ANN. § 65.014(a). However, execution generally may not issue until "the expiration of thirty days from the time a final judgment is signed." TEX. R. CIV. P. 627. In analyzing these two provisions together, the supreme court concluded as follows:

> Obviously, a writ of execution will not issue until after a final and appealable judgment is signed. Consequently, since a writ of execution will not issue until after a final and appealable judgment is signed, the statute of limitations under 65.014 for granting an injunction to stay execution of a valid judgment does not begin to accrue until a final and appealable judgment is signed. Since there was no final and appealable judgment in this cause, Guarantors' right to injunctive relief to stay execution of the judgment was not barred by the statute of limitations under section 65.014.

6

*Hood*, 815 S.W.2d at 548. We hold that the supreme court's reasoning in *Hood* extends to this case. Because a writ of execution cannot be issued until a final judgment is signed, TEX. R. CIV. P. 627, and because an interlocutory judgment can be modified or vacated at any time, *see Fruehauf Corp. v. Carillo*, 848 S.W.2d 83, 84 (Tex. 1993), we conclude that the term rendition as used in § 34.001 refers to the rendition of a final judgment.

This begs the question, though, of which judgment was final and appealable. Meadors asserts that "a very strong argument could be made that the December 15, 2005 judgment actually is a final judgment" because it orders execution to issue and it contains a Mother Hubbard clause (emphasis omitted). Neither of these arguments is persuasive. First, Mother Hubbard clauses were disavowed in *Lehmann*, and the supreme court instructed that the language, "all relief not granted is denied," "does not indicate that a judgment rendered without a conventional trial is final for purposes of appeal." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203–04 (Tex. 2001). And second, "[w]e cannot conclude that language permitting execution 'unequivocally express[es]' finality in the absence of a judgment that actually disposes of all parties and all claims." *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 830 (Tex. 2005) (quoting *Lehmann*, 39 S.W.3d at 200). The December 26, 2005 judgment did not contain language expressing finality to all claims and parties, and the record indicates that it did not actually dispose of all claims and parties. The December judgment merely disposed of the Makowskis' claims against Meadors while the Makowskis' claims against other parties remained pending. Thus, it was an interlocutory judgment. *See Farm Bureau Cnty. Mut. Ins. V. Rogers*, 455 S.W.3d 161, 163 (Tex. 2015).

7

A trial court's interlocutory orders merge into its final judgment. *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020). Here, when the trial court signed the order that finally disposed of all claims and all parties, it necessarily replaced its December 2005 order disposing of the Makowskis' claims against Meadors with the May 2006 order. *See Roccaforte v. Jefferson County*, 341 S.W.3d 919, 924 (Tex. 2011). Thus, the "rendition of judgment" in this case was the final, appealable order that resolved all the issues in the case, not the interlocutory order disposing only of the Makowskis' claims against Meadors. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a); *Hood*, 815 S.W.2d at 548. And therefore, the deadline to serve a writ of execution in this case can be traced back to May 2006, not December 2005. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a).

Meadors cites to *Ware v. Everest Group, L.L.C.* in support of his claim that rendition occurs regardless of a judgment's finality. *See* 238 S.W.3d 855 (Tex. App.—Dallas 2007, pet. denied). In *Ware*, the Dallas Court of Appeals examined whether a foreign judgment was rendered on the date it was filed in a Texas court, or when the clerk was able to issue execution on the judgment. *Id.* at 863–64. But to the extent that *Ware* is apposite here, it does not support Meadors's position. Indeed, the Dallas Court of Appeals ultimately reached the conclusion that "the filing [of a foreign judgment] has the effect of initiating an enforcement proceeding and instantly rendering a *final* Texas judgment simultaneously." *Id.* at 864 (citing *Dear v. Russo*, 973 S.W.2d 445, 446 (Tex. App.—Dallas 1998, no pet.)) (emphasis added). The Dallas Court of Appeals held that this is when the § 34.001 clock started, not when the clerk later obtained the authority to

8

issue a writ of execution. *Id.* at 864.

Embedded within this issue, Meadors also raises what he refers to as "practical considerations" and what the Makowskis refer to as a "parade of horribles." Regardless of the nomenclature, in essential terms, Meadors argues that this Court's decision will negatively impact the real estate market because title examiners and the like will not be able to exclusively rely on the date provided on an abstract of a judgment to determine whether a lien still exists. *See* TEX. PROP. CODE ANN. § 52.003 (requiring an abstract of a judgment to show, among other things, "the date on which the judgment was rendered"); *id.* § 52.006 (explaining that, generally, "a judgment lien continues for 10 years following the date of recording and indexing the abstract, except that if the judgment becomes dormant during that period the lien ceases to exist").

The Fifth Circuit has previously held that a final judgment in Texas became dormant ten years after the judgment was final on appeal. *Andrews v. Roadway Exp. Inc.*, 473 F.3d 565, 569, 569 n.4 (5th Cir. 2006). An abstract of a judgment need not list when a judgment became final on appeal. *See* TEX. PROP. CODE ANN. § 52.003(a). Based on the *Andrews* decision and the impact it may have on judgments obtained in federal district courts in Texas, we certainly hope that title examiners are already looking beyond the abstract of a judgment to determine the validity of a lien. Even if they are not, requiring a title examiner to double-check court documents to determine a lien's validity does not rise to the level of an absurd result that we must avoid in conducting our statutory interpretation. *See In re E.C.*, 444 S.W.3d 760, 765 (Tex. App.—Fort Worth 2014, no pet.) ("[A]n inefficient result is not analogous to an absurd result, which is what we seek to

avoid when construing a statute."). Because the Makowskis complied with § 34.001(a) within ten years of the rendition of judgment, we conclude the trial court did not err in granting the Makowskis' motion for summary judgment and denying Meadors's motion for summary judgment.

We overrule this issue.

### IV. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Delivered and filed on the
15th day of December, 2022.

10