**Joel GILLET, Appellant**

v.

**ZUPT, LLC, Appellee**

**NO. 14–15–01033–CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed February 23, 2017

Lance C. Winchester, Joseph Centrich, The Woodlands, TX, for Appellant.

Elizabeth M. Bruman, Spring, TX, Stuart N. Wilson, Houston, TX, James S. Annelin, The Woodlands, TX, for Appellee.

Panel consists of Justices Boyce, Christopher, and Brown.

## OPINION

William J. Boyce, Justice

Joel Gillet sued appellee ZUPT, LLC—of which Gillet is a part-owner—seeking to force a buyout of his interest in ZUPT. In a counterclaim, ZUPT contended that Gillet disclosed ZUPT's trade secrets to a competitor that employed Gillet. An arbitrator awarded each party damages but declined to offset the damages in the award. The trial court confirmed the award, and ZUPT sought a turnover order and appointment of a receiver to collect the judgment.

Gillet appeals from the trial court's order appointing a receiver and ordering turnover. Gillet contends that the trial court lacked evidence of non-exempt assets subject to turnover; that a charging order was the exclusive remedy to collect against his membership interest in a limited liability company; and that the turnover order was inconsistent with the court's final judgment because it required turnover of his membership interest in a manner contradicting the final judgment.

We reverse the trial court's turnover order for two reasons. First, the trial court's turnover order requires Gillet to turn over his membership interest in ZUPT but does not mandate that Gillet receive a dollar credit equal to his judgment for his interest. This potentially could lead to a situation in which the receiver values Gillet's membership interest in ZUPT at less than the value the final judgment mandates Gillet receive for the interest; as a result, the receiver could execute the turnover order in a manner inconsistent with the final judgment. Second, the turnover order requires turnover of a number of categories of assets without evidence that such non-exempt assets exist. We remand to the trial court to revise the turnover order consistent with this opinion.

### BACKGROUND

ZUPT is a limited liability company that develops and sells subsea surveying services to customers in the oil and gas industry. Gillet owns 45 percent of ZUPT.

Gillet gave notice in March 2009 of his intent to force ZUPT and its members to purchase his interest in ZUPT in accordance with a Buy–Sell Agreement. Unbeknownst to the other members of ZUPT, Gillet already had accepted an offer at that time to work for one of ZUPT's competitors.

Gillet resigned his employment at ZUPT in June 2009 and went to work for the competitor. Gillet did not resign as a member of ZUPT and still owns 45 percent.

An appraisal conducted as a result of Gillet's buy-out demand valued ZUPT at $1,600,000; 45 percent of $1,600,000 is $720,000. The appraiser's $1,600,000 valuation was based on a presumption that the entirety of ZUPT would be sold, not just Gillet's 45 percent. It also was based on a presumption that Gillet would sign an industry standard non-compete agreement. After learning that Gillet refused to sign a non-compete agreement and after applying a valuation discount to Gillet's minority interest, the appraiser revised his apprais-

al of Gillet's 45 percent interest to $229,000.

Gillet sued ZUPT and its other individual owners in June 2010 for oppression and subsequently added a claim for breach of contract based on ZUPT's alleged breach of the Buy–Sell Agreement.

ZUPT and its other individual owners counterclaimed; among other things, they asserted that Gillet misappropriated ZUPT's confidential information and trade secrets and breached his fiduciary duty by disclosing that confidential information for the benefit of his new employer.

The parties arbitrated the case in late 2012 and the arbitrator rendered an arbitration award on January 29, 2013. In her award, the arbitrator determined that ZUPT owed Gillet $499,050 for the value of his 45 percent interest.[1] She determined that upon payment of the $499,050 by ZUPT, Gillet "shall surrender all of his certificates, shares or other indicia of his ownership interest in ZUPT" and Gillet's ownership interest in ZUPT would cease. The arbitrator awarded Gillet $70,060 for his reasonable and necessary attorney's fees.

The arbitrator also determined that Gillet breached his fiduciary duty to ZUPT by disclosing ZUPT's trade secrets, entitling ZUPT to recover actual damages of $1,869,164 plus an additional $1,000 permitted by the Texas Theft Liability Act. The arbitrator awarded ZUPT $169,612.25 for its reasonable and necessary attorney's fees.

The arbitrator awarded pre- and post-judgment interest and costs of court to each party.

ZUPT requested that the amount it owed Gillet for his ownership interest in ZUPT be offset by the amount Gillet owed to ZUPT for his breach of fiduciary duty. The arbitrator denied the request for offset.

ZUPT moved in the trial court to confirm the arbitration award. The trial court signed a final judgment on June 15, 2015, confirming the award. The final judgment awarded each party amounts consistent with the arbitrator's award.

ZUPT applied for turnover and appointment of a receiver in July 2015. The trial court held two hearings on the application. The trial court ordered turnover and appointed a receiver to collect non-exempt property to satisfy the judgments against Gillet and ZUPT on November 10, 2015. It is from this order that Gillet now appeals.

## STANDARD OF REVIEW

 We review a trial court's order requiring turnover and appointing a receiver for an abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (turnover order); *Sheikh v. Sheikh*, 248 S.W.3d 381, 386–87 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (receivership order). We affirm unless the trial court acted in an unreasonable or arbitrary manner. *Buller*, 806 S.W.2d at 226. "[A] trial court's issuance of

---

1. Because nothing in the Buy–Sell Agreement required Gillet to sign a non-compete agreement, the arbitrator determined that the diminution in valuation resulting from Gillet's refusal to sign a non-compete agreement should be borne equally by all members of ZUPT, not just Gillet. Accordingly, the arbitrator took the difference between the appraiser's valuation for Gillet's 45 percent interest assuming a valid non-compete agreement ($720,000) and without a non-compete agreement ($229,000), and arrived at $491,000 as the amount by which ZUPT's value was diminished by Gillet's refusal to sign the non-compete. She subtracted that amount from the total $1,600,000 valuation of ZUPT to determine ZUPT's value without the signed non-compete. The arbitrator multiplied the resulting $1,109,000 by 45 percent to determine the value of Gillet's share of ZUPT: $499,050.

a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason." *Id.*

## ANALYSIS

### I. Evidence Supporting Turnover Order

In his first issue, Gillet contends the trial court erred by ordering the turnover of property without evidence that Gillet possessed any such non-exempt property.

### A. Texas Turnover Statute

■ The Texas "turnover" statute allows judgment creditors to reach assets of a judgment debtor that are otherwise difficult to attach or levy on by ordinary legal process. *Id.* at 224. Specifically, a judgment creditor may seek turnover relief against a judgment debtor if the judgment debtor owns property, including present or future rights to property, that (1) cannot readily be attached or levied on by ordinary legal process, and (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a) (Vernon 2015). The court may order the judgment debtor to turn over non-exempt property to a designated sheriff or constable for execution, may otherwise apply the property to the satisfaction of the judgment, or may appoint a receiver with the authority to take possession of the non-exempt property, to sell it, and to pay the proceeds to the judgment creditor to satisfy the judgment. *Id.* § 31.002(b).

■ The trial court is not required to identify the specific property subject to turnover in the order. *Id.* § 31.002(h). Moreover, while there must be some evidence that the judgment debtor has non-exempt property that is not readily subject to ordinary execution, "[s]ection 31.002 does not specify, or restrict, the manner in which evidence may be received in order for a trial court to determine whether the conditions of section 31.002(a) exist, nor does it require that such evidence be in any particular form, that it be at any particular level of specificity, or that it reach any particular quantum before the court may grant aid under section 31.002." *See Tanner v. McCarthy*, 274 S.W.3d 311, 322 (Tex. App.–Houston [1st Dist.] 2008, no pet.). The lack of evidence supporting a turnover order does not automatically invalidate the order, but is "a relevant consideration in determining if the trial court abused its discretionary authority in issuing the order." *See Buller*, 806 S.W.2d at 226.

### B. Evidence of Specific Property Identified in Turnover Order

ZUPT did not attach affidavits or other evidence to its application for turnover and for appointment of a receiver. The trial court held two hearings on the application. ZUPT presented no evidence during the first hearing.

During the second hearing, ZUPT entered into evidence the Constable's *nulla bona*[2] return to ZUPT's writ of execution. The return stated that Gillet told the executing deputy that he "did not have any money, stocks, bonds or non[-]exempt personal assets." The executing deputy likewise could not locate any nonexempt property belonging to Gillet.

ZUPT also presented two officers from the Harris County Constable's Office who testified about the return and confirmed that no non-exempt property was identified by the executing deputy. ZUPT did

---

**2.** Meaning "no goods" in Latin, *nulla bona* is a form of return by a sheriff or constable upon an execution when the judgment debtor has no seizable property within the jurisdiction. *Nulla Bona*, BLACK'S LAW DICTIONARY (10th ed. 2014).

not present evidence of any non-exempt assets belonging to Gillet during either hearing.

The trial court later granted the application for turnover and appointed a receiver. In its order, the trial court vested the receiver with authority:

> to take possession of and at Receiver's discretion liquidate any non-exempt property, real and personal, of JOEL GILLET and ZUPT, LLC, including, but not limited to: (1) all documents or records, including financial records, related to such property that is in the actual or constructive possession or control of the [sic] JOEL GILLET and ZUPT, LLC; (2) all financial accounts (bank accounts), certificates of deposit, money market accounts, accounts held by any third-party; (3) all securities; (4) all real property, equipment, vehicles, boats and, [sic] planes; (5)· all safety deposit boxes, private storage spaces and vaults; (6) all cash; (7) all negotiable instruments, including promissory notes, drafts and checks; (8) causes of action, chose[s] in action and claims; (9) contract rights whether present or future; and [sic] (10) accounts receivable; (11) the 45% membership interest of JOEL GILLET in ZUPT, L.L.C.[;] and (12) Judgments ....

Gillet contends that the trial court abused its discretion in ·ordering turnover of· the listed assets without evidence of their existence.

■ Although ZUPT did not present evidence of non-exempt assets with its application or at the hearings, Gillet is incorrect that the trial court lacked evidence of any assets subject to turnover.

As a threshold matter, the trial court was free to take judicial notice of its final judgment. *See, e.g., In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.–Houston [14th Dist.] 2013, pet. denied) ("We presume the trial court took judicial notice of its record without any request being made and without any announcement that it has done so.").

The final judgment awarded each party damages, and each party could proceed to collect from the other under the judgment. To that extent, the judgment reflected an obligation owed by each party to pay money to the· other. *See Goodier v. Duncan*, 651 S.W.2d 25, 27 (Tex. App.–Dallas 1983, writ ref'd n.r.e.) (" 'Regardless of the nature of the right which gave rise to it, the judgment is an obligation to pay money in the nature of a debt upon a specialty.' ") (quoting *Milwaukee Cty. v. M.E. White Co.*, 296 U.S. 268, 275, 56 S.Ct. 229, 80 L.Ed. 220 (1935)); *see also In re Boward*, No. 03-1520, 2005 WL 3263924, at *1 (Bankr. D. Mass. June 27, 2005) ("A judgment is a debt in itself, not merely evidence of an underlying debt, liability, or obligation."). And, to the extent the judgment reflected a debt owed to each party by the other, we see no reason it should not be treated as any other debt owing and thus collectible in a turnover proceeding. *See* Tex. Prop. Code Ann. § 12.014(a) (Vernon 2014) ("A judgment or part of a judgment of a court of record ... may be sold, regardless of whether the judgment ... is assignable in law or equity, if the · transfer is in writing."); *see also, e.g., E. Bloc Entm't, Ltd. v. Abco Props., Inc.*, No. 01-08-00238-CV, 2010 WL 1053102, at *5 (Tex. App.–Houston [1st Dist.] Mar. 11, 2010, no pet.) (mem. op.) ("Applying section 31.002, that Eastern 'owns' its cause of action (the lease dispute it filed), that its cause of action cannot be readily attached or levied on by ordinary legal process, and that its cause of action is not exempt from attachment, execution, or seizure for the satisfaction of liabilities are facts readily susceptible to judicial notice."); *United Bank Metro v. Plains Overseas Grp., Inc.*, 670 S.W.2d 281, 282–83 (Tex. App.–Hous-

ton [1st Dist.] 1983, no writ) (purpose of the turnover statute, as stated in the Texas House and Senate Committee Reports, is to facilitate the collection of assets such as "contract rights receivable, accounts receivable, commissions receivable and similar acts to property or rights to receive money at a future date"); *but see Visage v. Marshall*, 763 S.W.2d 17, 18 (Tex. App.–Tyler 1988, no writ) (rejecting assertion that "a valid final Texas judgment is a property right of the judgment holder which may be used to satisfy creditors"). The trial court ordered the receiver to take possession of "Judgments," which included the final judgment of which the trial court was aware.

Likewise, the trial court could take judicial notice of Gillet's ownership interest in ZUPT, which the trial court had ordered be conveyed to ZUPT in its final judgment. Gillet's 45 percent ownership interest was a non-exempt asset known to the trial court, and the trial court thus properly authorized the receiver to take possession of the interest. *See Khan v. Chaudhry*, No. 09-15-00007-CV, 2016 WL 1600444, at *2 (Tex. App.–Beaumont Apr. 21, 2016, no pet.) (mem. op.) (affirming turnover order consistent with final judgment that "ordered Khan to 'undertake all actions necessary and execute all documents necessary to effectuate the transfer of his ownership interest in Xenon Anesthesia of Texas PLLC' to Chaudhry"); *see also Gerdes v. Kennamer*, 155 S.W.3d 541, 546 (Tex. App.–Corpus Christi 2004, no pet.) (in case involving a Mexican entity, court of appeals concluded that, "on these facts we find that the trial court's order that Gerdes deliver originals of documents executed by both himself and his wife to effect a turnover of ownership in Don Rogelio is not beyond the scope of the turnover statute. . . . We hold that the trial court did not abuse its discretion in issuing a turnover order that required Gerdes to

turn over documents signed by both himself and Carolyn Gerdes").

The trial court was aware of these non-exempt assets; it also had evidence that the assets could not readily be attached or levied on by ordinary legal process. ZUPT tendered as evidence its *nulla bona* return, signifying that the constables had been unable to locate any non-exempt property belonging to Gillet. *See, e.g., E. Bloc Entm't*, 2010 WL 1053102, at *4–5 (writ of execution returned *nulla bona* was evidence that the cause of action "owned" by judgment debtor could not be readily attached or levied on by ordinary legal process). Additionally, ZUPT filed an emergency motion to appoint a receiver after the second hearing and before the trial court granted the application. ZUPT attached to the motion an email from the Harris County District Clerk's office in which the clerk's office rejected ZUPT's request to have its writ of execution issued. Gillet already had an outstanding writ of execution, and the clerk's office advised that it would not issue a second writ in a case until the previous writ was returned or expired. This is additional evidence that Gillet's non-exempt property was difficult to attach through ordinary legal process.

Because there is evidence that Gillet had non-exempt property subject to turnover in the form of his award in the final judgment and his ownership interest in ZUPT, we conclude that the trial court did not abuse its discretion by ordering turnover of those property rights. *See Tanner*, 274 S.W.3d at 321 ("A trial court will not be reversed for an abuse of discretion so long as there is some evidence of a substantive and probative character to support the decision.").

■ To the extent that the trial court ordered turnover of property other than

Gillet's award in the final judgment and Gillet's ownership interest in ZUPT, the order was unsupported by any evidence and constituted an abuse of the trial court's discretion. *See Stanley v. Reef Sec., Inc.*, 314 S.W.3d 659, 666–67 (Tex. App.–Dallas 2010, no pet.) (trial court did not abuse its discretion by ordering turnover of future right to payments that were supported by evidence, but remainder of order requiring turnover of other property not supported by evidence was an abuse of discretion); *see also Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, No. 06-16-00029-CV, 2016 WL 7912458, at *11 n.16 (Tex. App.–Texarkana Sept. 28, 2016, no pet.) ("We recognize that the turnover statute allows the trial court to enter a turnover order without identifying the specific property subject to the order. . . . However, nothing in the statute allows the entry of such an order without evidence to support it.").

Gillet's first issue is sustained in part.

## II. Requiring Turnover of Gillet's Equity

■ Having determined above that the trial court had evidence to support its order of turnover of Gillet's membership interest, we must address Gillet's second issue that a charging order was the exclusive remedy against his membership interest in ZUPT.

■ A judgment creditor of a member of a limited liability company may enforce a judgment against that member by requesting a charging order against the member's membership interest in the company. *See* Tex. Bus. Orgs. Code Ann. § 101.112(a) (Vernon 2012). The charging order is "the exclusive remedy by which a judgment creditor of a member or of any other owner of a membership interest may satisfy a judgment out of the judgment debtor's membership interest," and pro-

vides only the right to receive any distribution from the limited liability company to which the judgment debtor would be entitled. *Id.* §§ 101.112(b), (d). A charging order is a lien on the judgment debtor's membership interest that may not be foreclosed. *Id.* § 101.112(c).

Gillet contends that a charging order was ZUPT's "exclusive remedy" against his interest in ZUPT and that the trial court's order requiring turnover of the interest directly violates the charging order statute. Whether a charging order is the exclusive remedy when the judgment creditor is the limited liability company of which the judgment debtor owns a membership interest appears to be an issue of first impression.

The charging order was developed to prevent a judgment creditor's disruption of an entity's business by forcing an execution sale of the partner's or member's entity interest to satisfy a debt of the individual partner or member. *See Stanley*, 314 S.W.3d at 664 (analyzing equivalent partnership charging order statute); *see also* Michael C. Riddle, et al., *Choice of Business Entity in Texas*, 4 Hous. Bus. & Tax L.J. 292, 318 (2004) ("[T]he charging order developed as a way to prevent the creditor of one partner from holding up the business of the entire partnership and causing injustice to the other partners."). But that reasoning for preventing foreclosure of a member's interest does not apply in a situation such as that before us, where the judgment creditor seeking turnover of the membership interest is the very same limited liability company from which the membership interest derives.

At least one other court has concluded that turnover of a membership interest is proper in such a situation without directly determining whether a charging order is the exclusive remedy. *See Khan*, 2016 WL

1600444, at *1–2, 2 n.1 (affirming order requiring turnover of equity interest in professional limited liability company and noting that, "[i]n the hearing before the trial court, Khan argued that Chaudhry's sole remedy was a charging order, but he does not advance this argument in his appeal"). Despite the lack of discussion of the charging order remedy in *Khan*, we agree with the conclusion reached by that court.

We hold that requiring turnover of a membership interest under these circumstances is proper for two reasons. First, the reasoning behind requiring a charging order as the exclusive remedy is inapposite when the judgment creditor seeking the membership interest is the entity from which the membership interest derives. Second, unlike a case in which a judgment creditor seeks to collect on its money judgment by forcing a sale of a membership interest, this case involves an explicit award of the membership interest itself from one party to the other as part of the judgment. For these reasons, we conclude that a charging order was not the exclusive remedy available to ZUPT, and the trial court did not abuse its discretion by ordering turnover of Gillet's 45 percent interest in ZUPT.

Gillet's second issue is overruled.

## III. The Turnover Order Conflicts with the Final Judgment

In his third issue, Gillet contends that the turnover order constitutes an impermissible collateral attack on the final judgment because the turnover order allows the receiver to collect Gillet's interest

in ZUPT before compensating Gillet for that interest.[3] We agree that the turnover order conflicts with the final judgment, but not for the reason argued by Gillet.

A trial court has inherent authority to enforce its judgments. *See* Tex. R. Civ. P. 308; *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982) ("The general rule is that every court having jurisdiction to render a judgment has the inherent power to enforce its judgments."). The only limit on the trial court's authority is that the trial court's post-judgment enforcement orders must be consistent with the original judgment and must not constitute a material change in substantial adjudicated portions of the judgment. *Beluga Chartering B.V. v. Timber S.A.*, 294 S.W.3d 300, 306 (Tex. App.–Houston [14th Dist.] 2009, no pet.); *Katz v. Bianchi*, 848 S.W.2d 372, 374 (Tex. App.–Houston [14th Dist.] 1993, no writ).

The final judgment requires that "upon payment of [the damages and prejudgment interest, totaling $565,505.49, awarded to Gillet], Gillet's ownership interest in ZUPT will be ended and he shall surrender all of his certificates, shares or other indicia of his ownership interest in ZUPT." By contrast, the turnover order requires Gillet to turnover his membership interest in ZUPT to the receiver; it does not mandate that Gillet receive the judgment award or a dollar credit equal to the judgment award in exchange for his membership interest. This allows the receiver to value Gillet's membership interest in ZUPT at less than the value the final judgment mandates Gillet shall receive for that interest.

---

3. To the extent Gillet's brief can be read as asserting a claim that the turnover order contradicts the final judgment's denial of offset, Gillet has not argued the issue or provided any citations to relevant authorities. Any asserted argument concerning offset therefore is

waived. *See* Tex. R. App. P. 38.1(i) (requiring that an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

The final judgment does not require that Gillet receive the judgment award in hand—it requires that Gillet surrender his ownership interest "upon payment of this amount.....". So long as Gillet receives the monetary value mandated by the final judgment in exchange for his membership interest, we see no reason the award may not be paid by ZUPT to the receiver, credited to Gillet, and then applied to partially satisfy ZUPT's judgment award against Gillet. Because the turnover order as currently written does not explicitly require that Gillet receive a dollar credit equal to his judgment against ZUPT in exchange for his membership interest, we conclude that the turnover order is inconsistent with the final judgment.

Gillet's third issue is sustained in part.

## CONCLUSION

We reverse the trial court's turnover order and remand to the trial court for proceedings consistent with this opinion.