**Reversed and Remanded and Opinion on Rehearing filed August 13, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00670-CV

## HAMILTON METALS, INC., Appellant

## V.

## GLOBAL METAL SERVICES, LTD., Appellee

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2016-32078**

## O P I N I O N   O N   R E H E A R I N G [1]

In this appeal a judgment debtor challenges the trial court's order appointing a receiver under section 31.002(b) of the Texas Civil Practice and Remedies Code. Because evidence in the record shows that the judgment debtor had certain assets, we conclude that the trial court did not err in granting the receivership order as to

---

[1] On January 8, 2019, this court granted rehearing, vacated our judgment of November 27, 2018, withdrew the opinion in this case issued on November 27, 2018, and ordered this case resubmitted to a panel consisting of Chief Justice Frost and Justices Wise and Zimmerer.

these assets. Likewise, because the evidence does not show that the judgment debtor owned any other property, we conclude the trial court abused its discretion in granting the receivership order as to any other assets. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The trial court rendered a final money judgment on October 2, 2016, in favor of appellee/plaintiff Global Metal Services, Ltd. and against appellant/defendant Hamilton Metals, Inc. ("Judgment"). Global initiated a garnishment proceeding against PNC Bank, N.A., a financial institution holding three accounts in the name of Hamilton Metals, Inc. ("Hamilton").

Global filed an "Amended Ex Parte Application for Turnover After Judgment and for Appointment of Receiver," asserting that it held and owned the Judgment. According to Global, before seeking turnover relief Global made several attempts to contact Hamilton, and Global recorded various abstracts of judgment in the real property records of various Texas counties. Global also noted that it had initiated the garnishment proceeding against PNC Bank. Global asserted that none of these actions resulted in the collection of any money to be credited against the Judgment. Global noted that it had come to Global's attention that some of Hamilton's assets were pledged in connection with a Revolving Credit and Security Agreement with PNC Bank. Global stated that this line of credit "was subsequently foreclosed upon [by PNC Bank] under UCC Article 9 and [Hamilton's] tangible and intangible assets . . . were made available to third parties for purchase via private sale and were subsequently sold." Global asserted that at the time of the application, these assets were "not believed to be within the scope of this Application," but Global stated that it reserved the right to ask the trial court for additional relief as to these assets. The record does not reflect that Global ever sought such relief.

2

In its application, Global alleged that, upon information and belief, Hamilton continues to exist. Global claimed to have made a good faith effort to collect the Judgment but had been unsuccessful in doing so. Global asserted that Hamilton's failure to make any attempt to resolve the matter made it necessary for Global to seek appointment of a receiver to facilitate the collection of the Judgment. Global alleged that it had reason to believe that Hamilton, either directly or indirectly through its Chief Executive Officer, owned property not exempt from attachment, execution, or seizure for the satisfaction of liabilities and asked the trial court to appoint a receiver under the Texas turnover statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West, Westlaw through 2017 1st C.S.).

The trial court signed an order appointing a receiver. In the order the trial court gave the receiver the power to take possession of "any non-exempt property . . . of [Hamilton] necessary to pay judgments outstanding against [Hamilton], including, but not limited to" the following:

> (1) all documents or records, including financial records, related to such property that is in the actual or constructive possession or control of [Hamilton]; (2) all financial accounts (bank accounts), certificates of deposit, money market accounts, accounts held by any third-party; (3) all securities; (4) all real property, equipment, vehicles, boats and, planes; (5) all safety deposit boxes, private storage spaces and vaults; (6) all cash; (7) all negotiable instruments, including promissory notes, drafts and checks; (8) causes of action or choices [sic] of action; (9) contract rights whether present or future; and (10) accounts receivable.

The trial court gave the receiver the discretion to liquidate any of Hamilton's non-exempt property necessary to pay judgments outstanding against Hamilton. The trial court also ordered Hamilton to turn over to the receiver within five days of receiving a copy of the order "all checks, cash, securities (stocks and bonds),

3

interest in any business and/or partnerships, promissory notes, documents of title and contracts owned by or in the name of [Hamilton]."

On appeal from the trial court's order, Hamilton asserts various appellate arguments in an attempt to show that the trial court abused its discretion in issuing the receivership order.

## II. Issue and Analysis

**A.    Did the judgment creditor have to prove that the judgment debtor owned property that could not readily be attached or levied on by ordinary legal process?**

Hamilton asserts that even if Global submitted evidence that Hamilton owned property, Global did not present evidence that Hamilton owned any property that could not readily be attached or levied on by ordinary legal process. Hamilton argues that Global had to make this showing to be entitled to appointment of a receiver under section 31.002(b).

When Global filed its amended application on May 11, 2017, the turnover statute provided in pertinent part as follows:

> (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that**:**
>
> **(1) cannot readily be attached or levied on by ordinary legal process; and**
>
> (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
>
> (b) The court may:
>
>    (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

4

(2) otherwise apply the property to the satisfaction of the judgment; or

(3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3269 (amended 2017, 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 31.002) (emphasis added). If this statute were to apply, Global would have the burden of proving that Hamilton owns property that cannot readily be attached or levied on by ordinary legal process. *See Stephenson v. LeBoeuf*, No. 14-02-00130-CV, 2003 WL 22097781, at *2 (Tex. App.—Houston [14th Dist.] Sept. 11, 2003, no pet.) (mem. op.). Hamilton asserts that this version of the statute applies and that Global presented no evidence that any of Hamilton's property could not readily be attached or levied on by ordinary legal process.

The trial court held a hearing on the amended application on June 5, 2017. The trial court gave Hamilton time to file a response and did not rule on the application at the hearing. Hamilton filed a response, and Global filed a reply. After these events and after Global had submitted all of its evidence but before the trial court ruled on the application, the Texas Legislature amended section 31.002(a) effective June 15, 2017, by deleting the text emphasized in the statute quoted above. *See* Act of May 24, 2017, 85th Leg., R.S., ch. 996, § 1, 2017 Tex. Sess. Law Serv. 4026, 4026 (eff. June 15, 2017). The trial court signed the order on July 25, 2017. In the order, the trial court granted the application as of this date, and the trial court did not state that it considered or ruled on the application before June 15, 2017 — the statutory amendment's effective date.

We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989). In

construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id*. If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id*.

Under the unambiguous language of the amended statute, a judgment creditor no longer has the burden of proving that a judgment debtor's property cannot readily be attached or levied on by ordinary legal process. *See* Act of May 24, 2017, 2017 Tex. Sess. Law Serv. at 4026. Though Global had this burden when it applied for the relief, before the trial court ruled on the application the Legislature amended the statute to remove this burden. *See id*. The Legislature stated that the amended statute "applies to the collection of any judgment, regardless of whether the judgment was entered before, on, or after the effective date of this Act." Act of May 24, 2017, 85th Leg., R.S., ch. 996, § 2, 2017 Tex. Sess. Law Serv. 4026, 4026. The amendment took effect on June 15, 2017. *See* Act of May 24, 2017, 85th Leg., R.S., ch. 996, § 3, 2017 Tex. Sess. Law Serv. 4026, 4026. We conclude that the Legislature made this amendment applicable to judgments entered before the effective date of June 15, 2017, and that the amended statute applies to all applications considered after that date, even if the application was filed before the effective date of the statute. *See id*. Thus, under the amended statute, Global did not have the burden of proving that property owned by Hamilton could not readily be attached or levied on by ordinary legal process.

Instead, Global had to prove only that Hamilton owned property not exempt from attachment, execution, or seizure for the satisfaction of liabilities. *See id.*

Hamilton asserts that applying the amended version of section 31.002(a) to this case would constitute a retroactive application of the amended statute that would be improper because the Legislature did not clearly provide for a retroactive application. Hamilton concedes that the amended statute applies to the collection of the Judgment, but Hamilton asserts that the amended statute does not apply to applications for relief under section 31.002 that were pending on June 15, 2017.

Applying the amended version of section 31.002(a) to the trial court's granting of the application on July 25, 2017, does not amount to a retroactive application of the amended statute because the trial court's determination as to whether Global satisfied its burden of proof under section 31.002(a) occurred after the effective date of the statute. The Legislature did not provide that the prior version of the statute would continue in effect and apply to all applications pending on the statute's effective date. In addition, it would not be reasonable to construe the 2017 statute as requiring all pending applicants to refile their applications and resubmit evidence to obtain the benefit of the lesser burden of proof the 2017 statute provided.

Hamilton also cites various cases decided after the statute's effective date, in which the courts of appeals have applied the pre-amendment version of section 31.002(a). *See, e.g.*, *Tidwell v. Roberson*, No. 14-16-00170-CV, 2017 WL 3612043, at *6 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, pet. denied). But, none of the cases Hamilton cites are on point. In most of the cases, the trial court ruled on the application for relief under section 31.002(a) before the statute's effective date. *See, e.g., Tidwell*, 2017 WL 3612043, at *1. In addition, in none of these cases did the court address the issue of whether the amended statute applied. *See, e.g., id.* at *6–7. Thus, none of these cases stand for the proposition that the

7

pre-amendment version of the statute applies to rulings by the trial court issued after the statute's effective date. *See, e.g., id*. at *1, 6–7.

Hamilton asserts that Global waived the applicability of the amended version of section 31.002(a) by not raising this issue in the trial court. Hamilton cites a case holding that an appellant failed to preserve error in the trial court on a complaint the appellant raised on appeal. In this case Global is the appellee, and we must use the applicable version of section 31.002 in our analysis of Hamilton's appellate complaints. When Global filed its amended application, the Legislature had not yet enacted the statute amending section 31.002(a). *See* Act of May 24, 2017, 2017 Tex. Sess. Law Serv. at 4026. In any event, Global sought relief under section 31.002, and the amended version of this statute applied when the trial court granted Global's request for relief. In this context, the law did not require Global to make a specific request that the trial court apply the amended version of section 31.002(a) to get the benefit of this statute in Global's request for relief.

Hamilton asserts that Global waived the applicability of the amended version of section 31.002(a) by not raising this issue in its appellee's brief on original submission.[2] In its appellant's brief, Hamilton asserted that the trial court erred in granting relief under section 31.002 because Global did not submit any evidence to the trial court showing that Hamilton owned any property that could not readily be attached or levied on by ordinary legal process. Because Hamilton raised the issue of whether the statute required proof of this point, we cannot conclude that this issue was not raised on original submission. Though Hamilton, as appellant, has the burden to show that the trial court erred, Global, as appellee, need not raise any issue to have this court consider what took place in the trial court and determine whether Hamilton has shown that the trial court erred. *See*

---

[2] Global raised this issue in the motion for rehearing that this court granted.

*Tijerina v. Wysong*, No. 14-15-00188-CV, 2017 WL 506779, at *1–2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2017, no pet.) (mem. op.). If under the applicable law and the appellate record, an appellant has not shown that the trial court erred, we may not reverse the trial court's ruling, even if the appellee filed no brief or filed a brief that does not present a proper basis for affirming the trial court's ruling. *See id.* A trial court's issuance of a turnover order will not be reversed for abuse of discretion if the order is sustainable for any reason, and that reason need not be contained in the appellee's brief. *Gillet v. ZUPT, LLC*, 523 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Tijerina*, 2017 WL 506779, at *1–2.

Under the version of section 31.002(a) that applies to the trial court's ruling, Global did not have the burden of proving that any property owned by Hamilton cannot readily be attached or levied on by ordinary legal process. *See* Act of May 24, 2017, 2017 Tex. Sess. Law Serv. at 4026. Thus, presuming that Global presented no evidence to the trial court of any property owned by Hamilton that cannot readily be attached or levied on by ordinary legal process, this failure does not show any trial-court error. *See id.*

**B.  Did the judgment creditor prove that the judgment debtor owned any property?**

Hamilton also asserts that Global failed to prove that Hamilton owns any assets. We review a trial court's order requiring turnover and appointing a receiver for an abuse of discretion. *Gillet*, 523 S.W.3d at 753. The trial court abuses its discretion if it acts in an unreasonable or arbitrary manner. *Id.* A trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the order can be sustained for any reason. *Id.* at 754.

A judgment creditor may pursue turnover relief against a judgment debtor if the debtor owns property not exempt from attachment, execution, or seizure for the

satisfaction of liabilities. *See* Act of May 24, 2017, 2017 Tex. Sess. Law Serv. at 4026. To get turnover relief, the judgment creditor must carry the burden of proving that the judgment debtor owns property that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. *See id.*; *Gillet*, 523 S.W.3d at 757. Simply filing an application or motion for turnover relief does not suffice; rather, the judgment creditor must submit evidence establishing these elements. *See Shultz v. Fifth Judicial District Court of Appeals at Dallas*, 810 S.W.2d 738, 740 (Tex. 1991), *abrogated on other grounds by*, *In re Sheshtawy*, 154 S.W.3d 114, 124–25 (Tex. 2004); *Gillet*, 523 S.W.3d at 757.

Under section 31.002(b), the trial court may order the judgment debtor to turn over non-exempt property to a designated sheriff or constable for execution, may otherwise apply the property to satisfy the judgment, or may appoint a receiver with the authority to take possession of the non-exempt property, to sell it, and to pay the proceeds to the judgment creditor to satisfy the judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b) (West, Westlaw through 2017 1st C.S.). A court may enter or enforce an order under section 31.002 that requires the turnover of nonexempt property without identifying in the order the specific property subject to turnover. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(h) (West, Westlaw through 2017 1st C.S.); *Gillet*, 523 S.W.3d at 754. Moreover, while there must be some evidence that the judgment debtor has non-exempt property, section 31.002 does not specify, or restrict, the manner in which evidence may be received for a trial court to determine whether the conditions of section 31.002(a) exist, nor does the statute require that such evidence be in any particular form, that the evidence be at any particular level of specificity, or that the evidence reach any particular quantum before the court may grant aid under section 31.002. *Gillet*, 523 S.W.3d at 754. The lack of evidence supporting a turnover order does not automatically invalidate the order, but is a relevant consideration in

10

determining if the trial court abused its discretionary authority in issuing the order. *Id*. Even so, under binding precedent from this court, a trial court abuses its discretion if the court grants turnover relief and appoints a receiver under section 31.002(b) as to property without any evidence that the judgment debtor owns that property. *See id*. at 754–57.

### 1. *The Receivership Application*

In its receivership application, Global alleged that it in good faith had reason to believe that Hamilton, either directly or indirectly through its Chief Executive Officer, owned property that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. Global alleged that this property includes the following:

> funds at financial institutions, dividends, stocks, lines of credit, interest in subsidiaries and/or affiliates, real property, leases, licenses, permits, contract rights, royalties, patents, trademarks, instruments (including promissory notes), chattel paper (including electronic chattel paper), general intangibles relating to accounts, instruments, drafts and acceptances, credit card receivables arising out of or in connection with the sale or lease of inventory or the rendition of services, and all supporting obligations, guarantees and other security therefor, equipment and fixtures, payment intangibles and all software, inventory, capital stock, securities, membership interests, partnership interests, limited liability company interests or other equity interests of each direct or indirect subsidiary of [Hamilton], money, investment property, instruments and other property credited to any subsidiary and/or any subsidiary of such subsidiaries, cash and cash equivalents of [Hamilton] and any subsidiary, rights of payment which have been earned under contract rights, commercial tort claims (whether now existing or hereafter arising), warehouse receipts and bills of lading, deposit accounts, goods, letters of credit, cash, certificates of deposit, insurance proceeds (including hazard, flood and credit insurance), security agreements, eminent domain proceeds, condemnation proceeds, tort claim proceeds and all supporting obligations, computers, computer software, computer programs, proceeds and products of the property, receivables, leasehold interests;

guarantor rights, title, and interest; merchandise returned or rejected relating to, or securing, any receivables; all proceeds and products in whatever form, and all other non-exempt assets (hereinafter "List of Property").

Global's counsel verified the application, stating under oath that "every statement contained [in the application] is within her personal knowledge as counsel for [Global] and is true and correct to the best of her knowledge." Hamilton failed to get a ruling from the trial court on its objection that Global's counsel only stated that each statement is true and correct "to the best of her knowledge." We presume that this failure allowed the trial court to consider the application as evidence. In this verified application, Global's counsel stated that (1) Global in good faith had reason to believe that Hamilton owns property not exempt from attachment, execution, or seizure for the satisfaction of liabilities, including the general categories of property listed in the application, and (2) the foregoing statement was true and correct to the best of the knowledge of Global's counsel.[3] These tenuous statements that to the best of counsel's knowledge Global had reason to believe that Hamilton owns property that falls within general categories is not legally sufficient to support a finding that Hamilton owns property in any of these categories. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, No. 16-0006, 2019 WL 1873428, at *24–25 (Tex. Apr. 26, 2019).

### 2.    *The Exhibits to Global's Reply*

In its reply to Hamilton's response in opposition to the application, Global submitted the following evidence:  (1) a letter from an attorney for BioUrja

---

[3] Hamilton asserts that at a hearing on Global's application, Global's counsel made a judicial admission that directly contradicted the verified application. But none of counsel's statements at the hearing rise to the level of a clear, deliberate, and unequivocal statement that directly contradicts the verified application. *See Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996); *In re S.A.M.,* 321 S.W.3d 785, 790, n. 1 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

12

Trading, LLC and Hamilton Metals, LLC, (2) an answer PNC Bank filed in a garnishment proceeding Global initiated, and (3) an affidavit of James Millman, Hamilton's Chief Executive Officer. Global submitted this evidence more than a month before the trial court granted the application. On appeal, Hamilton asserts that the trial court should not have considered this evidence because Global did not present the evidence in a timely manner. Hamilton cites summary-judgment cases applying Texas Rule of Civil Procedure 166a for the timely filing of summary-judgment evidence. Hamilton does not cite any cases holding that these summary-judgment rules apply to an application under section 31.002 or addressing the deadline for filing evidence in a section 31.002 proceeding. We conclude that Rule 166a's deadlines for filing summary-judgment evidence do not apply to the filing of evidence in support of an application for relief under section 31.002 and that Global filed its evidence in a timely manner. *See Gillet*, 523 S.W.3d at 754.

Hamilton asserts that the letter from the attorney for BioUrja Trading, LLC and Hamilton Metals, LLC amounts to inadmissible hearsay. Hamilton waived the hearsay objection by failing to get a ruling from the trial court. *See Mock v. Nat'l Collegiate Student Loan Trust 2007-4*, No. 01-17-00216-CV, 2018 WL 3352913, at *3 (Tex. App.—Houston [1st Dist.] Jul. 10, 2018, no pet.) (mem. op.).

Hamilton also asserts that the letter from the attorney for BioUrja Trading, LLC and Hamilton Metals, LLC is inadmissible because there was no authentication of this document. We presume for the sake of argument that the trial court properly could have considered this document despite the lack of authentication. In this letter, the attorney states that some, but not all of Hamilton's assets were sold on October 6, 2016. The attorney also states that, as to the three accounts at PNC Bank in Hamilton's name, Hamilton Metals, LLC has taken control of one account, and as to the other two, "it is our understanding that

13

these accounts still belong to, and are controlled by, [Hamilton] and that there may only be a nominal, if any, amount of money in them, but this would need to be discussed with [PNC Bank]." The attorney did not state which assets of Hamilton were not sold on October 6, 2016. Though the attorney conveys his understanding that two bank accounts still belong to and are controlled by Hamilton, the attorney does not say that PNC Bank owes Hamilton any amount as to either of these two accounts. This letter is not legally sufficient to support a finding that Hamilton owns any property. *See Rohrmoos Venture*, 2019 WL 1873428, at *24–25; *Gillet*, 523 S.W.3d at 757.

Hamilton asserts that the answer PNC Bank filed in the garnishment proceeding constitutes inadmissible hearsay. Hamilton failed to get a ruling on this objection and thus waived it. *See Mock*, 2018 WL 3352913, at *3. The answer indicates that PNC Bank still holds three accounts in Hamilton's name. After asserting various objections in its answer, PNC Bank stated that it was unable to definitively determine whether it was indebted to Hamilton at the time of the answer because PNC Bank was unable to definitively determine the ownership of monies held in three Hamilton accounts. On appeal, Global asserts that the two accounts at PNC Bank that counsel for BioUrja Trading, LLC and Hamilton Metals, LLC understood were still owned and controlled by Hamilton are "accounts subject to collections." Yet, neither the garnishment answer nor any other evidence before the trial court showed that PNC Bank was indebted to Hamilton under any of the three accounts. *See Gillet*, 523 S.W.3d at 757. Thus, the answer does not stand as legally sufficient to support a finding that Hamilton owns any property. *See id*.

Hamilton asserts that the documents filed as part of Millman's affidavit amount to inadmissible hearsay and that there was no authentication of these

documents. Hamilton waived the hearsay objection by failing to secure a ruling on it from the trial court. *See Mock*, 2018 WL 3352913, at *3. The no-authentication argument lacks merit because Millman stated that the attached notice containing the documents was a true and correct copy of the original. *See In re Estate of Guerrero*, 465 S.W.3d 693, 704 (Tex. App.–Houston [14th Dist.] 2015, pet. denied) (en banc).

Millman testified by affidavit as follows:

- Hamilton was a Houston-based wholesaler of non-corrosive steel pipe used in oil and gas exploration and production operations.

- Hamilton financed its operations in part by a revolving line of credit issued by PNC Bank, N.A. that was secured by a duly-perfected, first-priority lien on all of Hamilton's assets.

- After encountering financial difficulties, Hamilton defaulted under the terms of its credit agreement with PNC Bank.

- As a result of the default, PNC Bank exercised its remedies under the credit agreement and disposed of its collateral at a private foreclosure sale conducted on October 6, 2016.

- The buyer at the foreclosure sale was BioUrja Trading, LLC. Neither Hamilton, nor any of its current or former officers and directors, have any interest in BioUrja Trading, LLC or Hamilton Metals, LLC, the entity formed by BioUrja to take ownership of Hamilton's former assets.

- The sale price at the foreclosure sale did not satisfy the total amount of PNC Bank's secured indebtedness, and PNC Bank currently holds a deficiency claim against Hamilton in excess of $6 million. PNC Bank's deficiency claim remains secured by a first-priority lien on any remaining assets, although Millman is not aware of any such assets.

- After foreclosure and liquidation of Hamilton's assets, Hamilton ceased operations.

- Hamilton "is a dormant legal entity with no valuable assets or equity."

15

Global did not dispute that the private foreclosure sale of Hamilton's assets had occurred on October 6, 2016 (before the trial court rendered the Judgment). In Global's application for a receiver, Global stated that Hamilton's line of credit "was subsequently foreclosed upon [by PNC Bank] under UCC Article 9 and [Hamilton's] tangible and intangible assets . . . were made available to third parties for purchase via private sale and were subsequently sold." Global asserted that at the time of the application, these assets were "not believed to be within the scope of this Application," but Global stated that it reserved the right to ask the trial court for additional relief as to these assets. The record does not reflect that Global ever sought such relief. Consistent with this part of the application, in the trial court's receivership order, the trial court excluded from the scope of the order the assets and property formerly owned by Hamilton that were acquired by BioUrja Trading, LLC and Hamilton Metals, LLC from PNC Bank through the foreclosure sale and related transactions. The trial court stated that this exclusion was without prejudice to Global's or the receiver's ability to petition the court for additional relief with respect to such assets and property. The record does not reflect that Global or the receiver petitioned for any such additional relief.

Global also cites "Schedule 5" to the notice attached to Millman's affidavit. Schedule 5 lists assets not included in the private sale by PNC Bank. Global asserts that this schedule shows assets owned by Hamilton that were not sold on October 6, 2016. According to Schedule 5, the private sale was not to include the following items:

> (1) any lease, license, contract, or agreement to which Hamilton is a party to the extent that a security interest therein is prohibited by or in violation of any applicable law or a term or condition of any such lease, license, contract, or agreement;

> (2) any equipment owned by Hamilton that is subject to a purchase-money lien or a capital-lease obligation if the grant of a security

16

interest therein would constitute a violation of a valid and enforceable restriction in favor of a third party, unless any required consents have been obtained;

(3) any monies, checks, securities or other items on deposit or otherwise held in deposit accounts or trust accounts specifically and exclusively used for payroll, payroll taxes, deferred compensation and other employee wage and benefit payments to or for the direct benefit of Hamilton's employees.

Schedule 5 does not contain any statement that Hamilton owns or possesses any of the above-described assets; rather, Schedule 5 and the notice document of which it is a part provide that if Hamilton owns any such assets, the assets would not be part of the private sale. No evidence before the trial court showed that Hamilton owned any such assets.

The list of excluded assets in Schedule 5 also includes certain tubular goods delivered to Hamilton as consignee and stored on Hamilton's property, for which ownership of the goods had not been transferred to Hamilton or its customers under an agreement between Hamilton and another company. Hamilton would not own any of these consigned goods.

The list of excluded assets in Schedule 5 also includes the following assets:

(1) six copiers, identified by serial number, securing Hamilton's obligations to Konica Minolta Business Solutions USA, Inc.;

(2) three Caterpillar assets, identified by serial number, securing Hamilton's obligations to De Lage Landen Financial Services, Inc.; and

(3) one Chevy Traverse SUV, identified by VIN number.

(collectively the "Ten Assets"). The evidence before the trial court when it signed the receivership order was sufficient to show that Hamilton had an ownership interest in each of the Ten Assets. The trial court did not abuse its discretion by granting relief under section 31.002(b) as to Hamilton's ownership interests in the

Ten Assets. *See Gillet*, 523 S.W.3d at 756. To the extent that the trial court granted relief under section 31.002(b) as to any other property, the order lacks supporting evidence. *See id*. at 757; *Great N. Energy, Inc. v. Circle Ridge Prod., Inc*., No. 06-16-00029-CV, 2016 WL 7912458, at *11 n.16 (Tex. App.—Texarkana Sept. 28, 2016, no pet.) (mem. op.); *Stanley v. Reef Sec., Inc*., 314 S.W.3d 659, 666–67 (Tex. App.—Dallas 2010, no pet.). Under the applicable standard of review, we conclude that the trial court abused its discretion in signing the receivership order to the extent the order applies to property other than Hamilton's ownership interests in the Ten Assets. *See Gillet*, 523 S.W.3d at 757; *Great N. Energy, Inc.*, 2016 WL 7912458, at *11 n.16; *Stanley*, 314 S.W.3d at 666–67.

The receivership order is thirteen pages long and contains various detailed provisions, including one requiring Hamilton to turn over to the receiver 28 categories of documents within five days of Hamilton's receipt of a copy of the receivership order. The record does not reflect that Hamilton has superseded the receivership order, and neither the appellate briefing nor the appellate record reflect what actions have occurred vis-à-vis the receivership since the receiver filed his oath and cash deposit in lieu of receiver bond soon after the trial court signed the receivership order. Under these circumstances, we conclude that a remand is necessary for further proceedings, and so we do not render judgment. *See* Tex. R. App. P. 43.3. We reverse the receivership order and remand with instructions to the trial court to issue a new order that applies only to Hamilton's ownership interests in the Ten Assets. *See id*.; *Gillet*, 523 S.W.3d at 757; *Great N. Energy, Inc.*, 2016 WL 7912458, at *11 n.16; *Stanley*, 314 S.W.3d at 666–67.

**C.    Do the judgment debtor's challenges to two specific parts of the order have merit?**

Hamilton also asserts that in the order the trial court impermissibly adjudicated the rights of third parties by giving the receiver the "exclusive right, power and authority to vote any shares of stock, partnership interest, or other business interests of [Hamilton]" and "the exclusive right, power, and authority to sign any orders, or minutes or resolutions of directors authorizing any action of [Hamilton] requiring such resolution or signed minutes by [Hamilton's] operating agreement."  We need not address this complaint because, as explained above, we are reversing the trial court's receivership order and remanding with instructions to the trial court to issue a new order that applies only to Hamilton's ownership interests in the Ten Assets, and none of the Ten Assets are shares of stock or equity interests.

Hamilton also complains that in the order the trial court provides that, "if it is discovered that Hamilton . . . or any of its owners and/or officers both former and present, held or hold an interest in the entities that purchased [Hamilton's] assets and property," Global and the receiver need not provide notice to BioUrja Trading, LLC, Hamilton Metals, LLC, and LogiBio Port Allen, LLC of any petition or request for additional relief with respect to the assets acquired from Hamilton by BioUrja Trading, LLC, Hamilton Metals, LLC, and LogiBio Port Allen, LLC.  No evidence in the record shows that the condition stated in this part of the order has occurred, and we are reversing the trial court's order.  We conclude that this complaint is not ripe for adjudication, and we do not address it. *See Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998).

19

### III. CONCLUSION

The trial court abused its discretion in signing the receivership order to the extent the order applies to property other than Hamilton's ownership interests in the Ten Assets. We reverse the receivership order and remand with instructions to the trial court to issue a new order that applies only to Hamilton's ownership interests in the Ten Assets.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Wise and Zimmerer.