**Affirmed as Modified in Part, Reversed in Part, Remanded, and Opinion filed July 13, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00547-CV

---

## ROBERT KLINEK, Appellant

## V.

## LUXEYARD, INC., Appellee

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2012-54501**

---

## O P I N I O N

Appellant Robert Klinek appeals an order granting turnover relief and appointing a receiver to aid in the collection of a final money judgment in favor of appellee LuxeYard, Inc. Klinek contends the order is error in two respects: (1) LuxeYard presented no evidence that Klinek owned non-exempt property subject to turnover relief; and (2) the court ordered a twenty-five percent receiver's fee without any evidence of reasonableness. We sustain in part, and overrule in part,

Klinek's first issue. We conclude that legally sufficient evidence supports the turnover order with respect to certain non-exempt assets; however, we also conclude that the trial court abused its discretion to the extent the turnover order applies to Klinek's ownership interests in a vehicle and three limited liability companies. We sustain Klinek's second issue because we conclude there is no record evidence establishing the reasonableness of the twenty-five percent receiver's fee.

Accordingly, we affirm as modified in part and reverse in part. We remand to the trial court for proceedings consistent with this opinion.

## Background

After a non-jury trial, the court ordered Klinek to disgorge to LuxeYard profits obtained through a "pump-and-dump" stock scheme. This court affirmed the judgment. *See Klinek v. LuxeYard, Inc.*, 596 S.W.3d 437, 443-45 (Tex. App.— Houston [14th Dist.] 2020, pet. denied) (subst. op.). To date, Klinek has refused to pay the judgment. LuxeYard sought information regarding Klinek's assets through post-judgment discovery. Klinek failed to comply with those requests and with trial court orders compelling his compliance. The court found Klinek in contempt for violating its orders.

LuxeYard filed a motion for turnover relief and to appoint Byron R. O'Neal as a turnover receiver.[1] LuxeYard's attorney, Jack J. Nichols, attached an affidavit to LuxeYard's motion, in which he averred: (1) the facts alleged in the motion are true and correct; (2) Klinek did not respond to LuxeYard's interrogatories or requests for production; (3) "it appears [] Klinek is the owner of various real estate holdings or equity in companies"; (4) Klinek "has held or holds law licenses and real estate licenses" and "is or was licensed to practice law in New York and California," and

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 31.002(d).

2

as such, "his ability to conceal or transfer assets increases the risk of asset loss, concealment, and difficulty collecting"; (5) Klinek's mailing and email addresses provide "a likely source of documents and information about non-exempt property such as contract rights receivable, accounts receivable, commissions receivable, and similar access to property or rights to receive money at a future date" that "may be applied to satisfy the judgment"; (6) "Klinek made substantial money off his involvement in the pump-and-dump scheme," and thus, "he has property to satisfy the judgment in the form of cash or property purchased with the cash"; (7) according to a public records search, Klinek owns real estate located in California valued at $1,000,000; (8) Klinek owns or did own a vehicle; (9) Klinek has ownership interests in several LLCs; and (10) Klinek invested in LuxeYard, and "part of the evidence in the records are [] Klinek's investment accounts" showing "he owns shares of stock and is entitled to dividends." LuxeYard also attached copies of the trial court's final judgment in the underlying proceeding and the trial court's order granting LuxeYard's motion for contempt and request for sanctions, as well as O'Neal's resume.

Klinek filed a response to LuxeYard's motion in which he asserted that Nichols's affidavit "contains false and legally insufficient statements" and that the motion "is not supported by a factual showing that Klinek owns any non-exempt property as required by" the turnover statute. Klinek did not attach an affidavit or unsworn declaration to his response, but he attached an unofficial copy of the plaintiffs' "second amended omnibus petition" in the underlying case, two photographs of computer screens that are undecipherable, an unclear copy of what appears to be Klinek's North Carolina driver's license, and two additional photographs of computer screens, the details of which are undecipherable but apparently relate to two of the three LLCs in which Klinek purportedly has

3

ownership interests. He filed a supplemental response in which he denied ownership of certain California real estate identified in Nichols's affidavit, but Klinek did not present any sworn evidence in support of his assertions in the supplemental response.

The trial court signed an order granting turnover relief and appointing a turnover receiver. Among other things, the court ordered Klinek to disclose to the receiver all his non-exempt assets and authorized the receiver to take possession of and/or levy all of Klinek's non-exempt property in his actual or constructive possession. Additionally, the order authorized the receiver to pay himself receiver's fees "equal to twenty-five percent of all proceeds coming into his possession," which the court found was a fair, reasonable, and necessary fee for the receiver.

Klinek timely appealed the trial court's order.[2]

## Turnover Order

### A. Standard of review and applicable law

In his first issue, Klinek contends the trial court abused its discretion in signing the turnover order without hearing any evidence that he owned non-exempt property. We review the granting of a turnover order for an abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Hamilton Metals, Inc. v. Global Metal Servs., Ltd.*, 597 S.W.3d 870, 878 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). The trial court abuses its discretion if it acts in an unreasonable or arbitrary manner. *Beaumont Bank*, 806 S.W.2d at 226.

---

[2] A turnover order that operates as a mandatory injunction is a final, appealable judgment. *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 586-87 (Tex. 2018) (per curiam); *Schultz v. Fifth Jud. Dist. Ct. App.*, 810 S.W.2d 738, 740 (Tex. 1991), *abrogated on other grounds by In re Sheshtawy*, 154 S.W.3d 114 (Tex. 2004). The order in today's case operates as a mandatory injunction and is thus an appealable order. *See Alexander Dubose*, 540 S.W.3d at 586-87.

4

A judgment creditor may seek a turnover order against a judgment debtor for the satisfaction of liabilities if the debtor owns property, including present or future rights to property, not exempt from attachment, execution, or seizure for the satisfaction of liabilities. Tex. Civ. Prac. & Rem. Code § 31.002(a). The trial court may order the judgment debtor to turn over non-exempt property and may appoint a receiver with the authority to take possession of the non-exempt property, to sell it, and to pay the proceeds to the judgment creditor to satisfy the judgment. *See id.* § 31.002(b). A court may enter or enforce an order under section 31.002 that requires the turnover of non-exempt property without identifying in the order the specific property subject to turnover. *Id.* § 31.002(h); *Hamilton Metals*, 597 S.W.3d at 878.

Section 31.002 does not specify or restrict the way in which evidence may be received for a trial court to determine whether section 31.002(a) is satisfied. *Hamilton Metals*, 597 S.W.3d at 878-79; *Gillet v. ZUPT, LLC*, 523 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Nor does the statute require that such evidence be in any particular form, that the evidence be at any particular level of specificity, or that the evidence reach any particular quantum before the court may grant aid under section 31.002. *Hamilton Metals*, 597 S.W.3d at 878-79. The lack of evidence supporting a turnover order does not automatically invalidate the order, but it is a relevant consideration in determining whether the trial court abused its discretion by signing the order. *Id.*

## B.    Burden of proof

The proposition underlying all of Klinek's arguments in his first issue is that LuxeYard as the judgment creditor bore the burden to prove both that Klinek owned property *and* that the property owned is not exempt from execution. Our court, however, has held in binding precedent that the burden of proving that property

5

owned by the debtor is exempt from execution rests with the judgment debtor. *Marrs v. Marrs*, 401 S.W.3d 122, 124 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("As a general rule, the party asserting an exemption bears the burden of establishing entitlement to the exemption"); *Lozano v. Lozano*, 975 S.W.2d 63, 67 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (party claiming exemption has burden to prove the exemption in turnover context); *Roosth v. Roosth*, 889 S.W.2d 445, 459 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (same); *Rucker v. Rucker*, 810 S.W.2d 793, 795-96 (Tex. App.—Houston [14th Dist.] 1991, writ denied).[3] Consistent with this court's precedent, we reject Klinek's contention that LuxeYard had the burden to prove that Klinek's property is not exempt from execution. LuxeYard had the initial burden to prove that Klinek owned property; the burden then shifted to Klinek to assert and prove that the property identified either was not owned or was exempt from execution.

---

[3] This court has noted, "the statute does not clearly indicate who has the burden of proving [an] exemption." *Roosth*, 889 S.W.2d at 459 n.4. The Supreme Court of Texas has not squarely declared which party bears the burden, and intermediate court decisions are unclear or inconsistent. *Compare Sloan v. Douglass*, 713 S.W.2d 436, 441 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.) (judgment creditor's burden to prove property is not exempt), *with Heckert v. Heckert*, No. 02-16-00213-CV, 2017 WL 5184840, at *4 n.4 (Tex. App.—Fort Worth Nov. 9, 2017, no pet.) (mem. op.) (judgment debtor's burden to prove property is exempt), and *Pillitteri v. Brown*, 165 S.W.3d 715, 722 (Tex. App.—Dallas 2004, no pet.) (same). Even our court has issued opinions that could be construed as conflicting on this point. *Compare Hamilton Metals*, 597 S.W.3d at 878 ("To get turnover relief, the judgment creditor must carry the burden of proving that the judgment debtor owns property that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities."), *with Roosth*, 889 S.W.2d at 459 & n.4 (expressly disagreeing with courts that have held the judgment creditor has burden to prove judgment debtor's property is not exempt). To the extent *Hamilton Metals* suggests that the judgment creditor has the initial burden to prove the non-exempt status of the judgment debtor's property, this court's earlier holdings in *Rucker* and *Roosth* control. Our court's approach in *Roosth* is certainly sensible in situations like here when a judgment debtor impedes the creditor's ability to prove ownership of property and non-exempt status by refusing to respond to post-judgment asset discovery.

## C.     Application

Turning to Klinek's evidentiary sufficiency arguments, we first look to LuxeYard's motion for turnover relief.   LuxeYard asserted that Klinek owns property as detailed in the attached verification by its counsel, Nichols.   Nichols averred in relevant part:

> Mr. Klinek made substantial money off his involvement in the pump-and-dump scheme, as this Court has already found in its Findings of Facts and Conclusions of Law.   Thus, he has property to satisfy the judgment in the form of cash or property purchased with the cash.[4]
>
> . . .
>
> According to a public records search, Robert Klinek is the owner of real estate located at 1200 Borden Rd., San Marcos, CA 92069-2112. This property was given a value of $1,000,000.   The previous owner was 1200 Venture, LLC.   This company is owned by Robert Klinek.
>
> Mr. Klinek owns or did own a 2012 Honda Fit with the VIN JHMGE8H35CS004484.   This vehicle was registered to the address of 403 Shady Grove Ct., Winston-Salem, NC 27103.
>
> Mr. Klinek owns property in the form of ownership interests in 1188 Borden, LLC (PO Box 157, Rancho Santa Fe, CA 92067); 1200 Venture, LLC (PO Box 157, Rancho Santa Fe, CA 92067); and Responsive LLC (403 Shady Grove Ct., Winston Salem, NC 27103).
>
> The record demonstrates Mr. Klinek is an investor.   He invested in LuxeYard.   Part of the evidence in the records are Mr. Klinek's investment accounts.   Thus, he owns shares of stock and is entitled to dividends.

---

[4] *See Klinek*, 596 S.W.3d at 442-45 (describing the "pump-and-dump scheme" in which Klinek participated and affirming trial court's judgment ordering Klinek to disgorge $395,146.63 in profits he obtained through the scheme).  The trial court was entitled to take judicial notice of the underlying proceedings in which Klinek was ordered to pay to LuxeYard an amount representative of the profits he obtained in his stock scheme.  *E.g.*, *Gillet*, 523 S.W.3d at 755-56; *see also Klinek*, 596 S.W.3d at 443-45.  We presume the trial court took judicial notice of its record without any request being made and without any announcement that it has done so.  *In re K.F.*, 402 S.W.2d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

1. Evidence

Klinek first urges that LuxeYard's supporting verification "is not evidence," but Klinek did not specifically identify or assert any legal objections to Nichols's verification or obtain a ruling on any general complaints lodged against it. And, as Klinek acknowledges, the turnover statute neither specifies the way evidence may be received nor requires that the evidence be in any particular form. *See Hamilton Metals*, 597 S.W.3d at 878-79. Nor does the turnover statute require that the evidence "be at any particular level of specificity, or that the evidence reach any particular quantum" before the court may grant turnover relief. *Id.* at 789. Nichol's notarized verification satisfies the requirements of an affidavit. Therefore, the factual statements contained therein constitute competent evidence.

The evidence before the trial court when it signed the turnover order was legally sufficient to show that Klinek had ownership interests in at least the following property or assets:

1) proceeds from the pump-and-dump stock scheme that is the subject of the judgment, or assets acquired with those proceeds;
2) real property located at 1200 Borden Rd., San Marcos, CA 92069-2112;
3) one Honda Fit, (VIN JHMGE8H35CS004484);
4) 1188 Borden, LLC (PO Box 157, Rancho Santa Fe, CA 92067);
5) 1200 Venture, LLC (PO Box 157, Rancho Santa Fe, CA 92067);
6) Responsive LLC (403 Shady Grove Ct., Winston Salem, NC 27103); and
7) shares of LuxeYard stock.

Once the judgment creditor makes a factual showing that the judgment debtor owns property, the burden shifts to the judgment debtor to account for those assets. *Roosth*, 889 S.W.2d at 459. In light of the information contained in Nichols's affidavit, the burden shifted to Klinek to prove any exemption as to the property

listed above. *See Great Value Storage, LLC v. Princeton Cap. Corp.*, No. 01-21-00284-CV, 2023 WL 3010773, at *17 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, no pet.) (mem. op.).

2.      Cash

Klinek first asserts that LuxeYard failed to prove that any cash from the pump-and-dump stock scheme remained in Klinek's possession and that he was "deprived the opportunity" to present evidence that he had spent the money. This argument has no merit. Even assuming Klinek offered such testimony at a hearing, a judgment debtor's "I spent it" excuse will not suffice. *See Beaumont Bank*, 806 S.W.2d at 227.[5] Once cash is traced to him, he is presumed to have possession and the burden shifted to him to account for the funds. *Id.* at 226. Klinek presented no evidence in this regard.

3.      Real property

Next, Klinek asserts that he does not own the California real property identified in Nichols's affidavit. In his supplemental response to LuxeYard's motion for turnover relief, Klinek claimed that he did not own the California real property, and he attached what he represented to be a deed showing a 2015 transfer of the land. But the deed is not certified or authenticated, Klinek did not verify any facts in his response or supplemental response, the other purported evidence attached to Klinek's response was largely undecipherable, and he filed no affidavit or unsworn declaration in support of his assertions. Klinek presented no evidence to controvert Nichols's affidavit showing that he has an ownership interest in the California real

---

[5] "Clearly, the trial court was within its discretionary authority in disbelieving Mrs. Buller's unsubstantiated claim that cash was spent, without any substantive accounting of the expenditures—especially when evidence shows the existence of other cash funds that have been sequestered in a foreign account. All unaccounted for cash is presumed to be in the possession of the debtor; simply asserting 'I spent it' is unacceptable." *Id.*

property.  Klinek did not assert in the trial court, and does not assert here, that the California real property is exempt from execution.[6]

### 4.    Automobile

Klinek does not dispute that he owns the automobile identified in Nichols's affidavit, but he contends it is exempt personal property.   Personal property described in Property Code section 42.002 is exempt from execution. *See* Tex. Prop. Code § 42.001.   Section 42.002(a)(9) includes in the list of exempted personal property a "four-wheeled motor vehicle for each member of a family or single adult who holds a driver's license." *Id.* § 42.002(a)(9).  LuxeYard offered no evidence that Klinek owns any additional automobiles, so we conclude that evidence exists that Klinek owns the automobile but that it is exempt from execution.  Because an automobile described by section 42.002 is exempt from execution as a matter of law, Klinek did not need to present any evidence to prove his assertions that it is exempt. We sustain this part of Klinek's first issue.[7]  To the extent the turnover order extends to the 2012 Honda Fit identified in Nichols's affidavit, the trial court abused its discretion because it ordered turnover of an exempt asset. *See Hamilton Metals*, 597 S.W.3d at 883 (reversing turnover order in part because it applied to property that was not owned by judgment debtor); *Gillet*, 523 S.W.3d at 757 (turnover order overbroad in part).[8]

---

[6]  Because the California real property is not a Texas homestead, it does not qualify for the homestead exemption under the Property Code. *See* Tex. Prop. Code §§ 41.001(a), 41.002.

[7] Klinek appears to be a North Carolina resident.  He has not argued that any law other than Texas law applies to this appeal.  Texas courts may presume that another state's law is the same as Texas law absent proof or argument to the contrary. *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 685 (Tex. 2006).

[8]  In *Hamilton Metals*, the evidence before the trial court when it signed the receivership order was sufficient to show that Hamilton had an ownership interest in one four-wheeled vehicle. *Hamilton Metals*, 597 S.W.3d at 883.  This court held that the trial court did not abuse its discretion in granting relief under section 31.002(b) as to Hamilton's ownership interest in the vehicle. *Id.*

### 5. Ownership in limited liability companies

Finally, Klinek argues that his ownership interests as a member in limited liability companies is not subject to turnover relief. Specifically, he asserts that a charging order is the exclusive remedy by which a judgment creditor of an LLC member may satisfy a judgment out of the member's ownership interest in the LLC.

A judgment creditor of a member of a limited liability company may enforce a judgment against that member by requesting a charging order against the member's interest in the company. *See* Tex. Bus. Orgs. Code § 101.112(a).[9] The charging order procedure was developed to prevent a judgment creditor's disruption of an entity's business by forcing an execution sale of the partner's or member's entity interest to satisfy a debt of the individual partner or member. *See Gillet*, 523 S.W.3d at 757; *Stanley v. Reef Sec., Inc.*, 314 S.W.3d 659, 664 (Tex. App.—Dallas 2010, no pet.) (analyzing equivalent statute for charging orders against partnership interests). A charging order provides only the right to receive any distribution from the limited liability company to which the judgment debtor would be entitled. Tex. Bus. Orgs. Code § 101.112(b). It is a lien on the judgment debtor's membership interest that may not be foreclosed. *Id.* § 101.112(c). Moreover, the judgment creditor who obtains a charging order may not compel a limited liability company to make a distribution, take possession of the judgment debtor's membership interest, or exercise any other legal or equitable remedies with respect to company property. *See id.* § 101.112(c), (d), (f); *Spates v. Office of Att'y Gen.*, 485 S.W.3d 546, 556

---

The court did not address the vehicle's exempt status, and it does not appear from the record in that case that Hamilton asserted the vehicle was exempt. Here, Klinek argued in the trial court and in our court that the Honda Fit is exempt personal property.

[9] According to Nichols's affidavit, the limited liability companies at issue are based in California and North Carolina. We presume Texas law applies to this issue because no party has argued otherwise. *See supra* n.7.

(Tex. App.—Houston [14th Dist.] 2016, no pet.). A charging order merely directs the limited liability company to send any distributed funds up to the amounts owed by the member directly to the judgment creditor rather than to the member. *See Spates*, 485 S.W.3d at 556.

A member's ownership interest in a limited liability company is a non-exempt asset. *See Gillet*, 523 S.W.3d at 756; *Heckert*, 2017 WL 5184840, at *7. But we agree with Klinek that a charging order is "the exclusive remedy by which a judgment creditor of a member or of any other owner of a membership interest may satisfy a judgment out of the judgment debtor's membership interest." Tex. Bus. Orgs. Code § 101.112(d). Despite the statute's plain language, however, some courts have upheld turnover relief when a member's interest in a limited liability company is at issue. For example, when a limited liability company has distributed money to a member who retains possession of the funds, turnover relief is appropriate to satisfy the judgment out of the distributed funds. *E.g.*, *Stanley*, 314 S.W.3d at 664; *Henderson v. Chrisman*, No. 05-14-01507-CV, 2016 WL 1702221, at *2-4 (Tex. App.—Dallas Apr. 27, 2016, no pet.) (mem. op.); *Goodman v. Compass Bank*, No. 05-15-00812-CV, 2016 WL 4142243, at *10 (Tex. App.— Dallas Aug. 3, 2016, no pet.) (mem. op.).[10] Similarly, in *Pajooh v. Royal West Investments LLC, Series E*, 518 S.W.3d 557 (Tex. App.—Houston [1st Dist.] 2017, no pet.), the court upheld a turnover order when a charging order was already in place. The court of appeals reasoned that turnover relief was proper to allow the creditor or receiver to "monitor" the limited liability company's distributions to "effectuate" the existing charging order. *Id.* at 567. In *Heckert*, the appellate found no error in the turnover of a member's interest in a limited liability company because

---

[10] In *Goodman*, the court had signed a charging order. A later turnover order applied to Goodman's present and future rights to distributions. The court held that turnover of distributions was permitted after the distributions had been made. *Goodman*, 2016 WL 4142243, at *10.

12

the company was not operating any business and no party's interest would have been disrupted by granting turnover relief. *Heckert*, 2017 WL 5184840, at \*9. In *Gillet*, this court upheld turnover relief because (1) the judgment creditor seeking the membership interest was the entity from which the membership interest derived, and (2) the judgment as issue awarded the transfer of the membership interest from one party to another. *Gillet*, 523 S.W.3d at 758.

None of the circumstances justifying turnover relief in these cases is present here. There is no charging order in place. And there is no evidence that Klinek has received distributions from any of the limited liability companies in which he owns an interest. To the extent the trial court ordered turnover of Klinek's ownership interests in the limited liability companies identified in Nichols's affidavit, it abused its discretion. Nevertheless, nothing about our opinion precludes an appropriate party from pursuing a charging order under the Business Organizations Code and perhaps a subsequent turnover order if the requirements are met.

6.    Other factors

While the existence or lack of evidence supporting the turnover order is one factor to consider in determining whether the trial court abused its discretion, *Beaumont Bank*, 806 S.W.2d at 226, courts may consider other factors and we believe Klinek's uncooperative behavior in responding to post-judgment discovery is also relevant. In its receivership application, LuxeYard detailed its unsuccessful attempts to (a) collect on the judgment owed by Klinek and (b) learn through post-judgment discovery what assets Klinek owned to satisfy the judgment. Klinek was found in contempt of the trial court's April 6, 2021 order compelling him to respond to LuxeYard's post-judgment discovery requests and in contempt of the trial court's June 15, 2021 show-cause order. Our record reflects that Klinek has "attempted to lie behind the log by refusing to respond to discovery seeking evidence of [his] assets

13

and then arguing that [LuxeYard] is not entitled to aid to satisfy its judgment because it has no evidence of [his] assets." *Great Value Storage*, 2023 WL 3010773, at *19; *see also Hennigan v. Hennigan*, 666 S.W.2d 322, 323-24 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (rejecting challenge to appointment of receiver when equities disfavored the opponent of the receivership; evidence showed that judgment debtor intended to hamper all efforts at collection). "In this case, the log can provide no hiding place because permitting such an outcome would frustrate the purpose of the turnover statute[.]" *Great Value Storage,* , 2023 WL 3010773, at *19; *see also Hennigan*, 666 S.W.2d at 323-24.

Finally, because Klinek has not complied with any post-judgment discovery requests, the turnover order unsurprisingly does not identify the specific assets subject to the order. The property listed in Nichols's affidavit was located by LuxeYard's independent efforts. The order requires Klinek to "make a full and complete disclosure to the Receiver of all of [Klinek]'s non-exempt assets." The order requires the receiver to apply to the trial court "for a specific finding on the exempt status of any real property and any personal property whose exempt status is unclear," and the application must be filed with and approved by the trial court only after notice and an opportunity for a hearing. A court "may enter or enforce an order under this section that requires the turnover of non[-]exempt property *without identifying in the order the specific property subject to turnover*." Tex. Civ. Prac. & Rem. Code § 31.002(h) (emphasis added); *see also Hamilton Metals*, 597 S.W.3d at 878-79. That is precisely what the turnover order in today's case does: it appoints a receiver to oversee the turnover of Klinek's non-exempt assets to satisfy LuxeYard's judgment. *Cf. Great Value Storage*, 2023 WL 3010773, at *16-19.

Although Klinek relies on the unsupported documents attached to his response and supplemental response, he asserts in passing that he would have presented

14

evidence at the hearing had the court conducted one.  To the extent Klinek's comments can be construed as a complaint about the court's failure to hold an evidentiary hearing, Klinek has failed to assign error to that decision in his appellate brief, and he has presented no argument or authority that failing to conduct a hearing was an abuse of discretion.  *See* Tex. R. App. P. 38.1(f), (i).  And we note that he did not request a hearing in the trial court.

Under these circumstances, and except in the respects discussed above, we cannot say the trial court abused its discretion in appointing a receiver and crafting the turnover order in today's case on the grounds advanced by Klinek.

We sustain in part, and overrule in part, Klinek's first issue.

### Attorney's Fees

In his second issue, Klinek asserts the trial court abused its discretion by setting the receiver's fee without any evidence of reasonableness.  The turnover statute authorizes recovery of reasonable costs in a turnover proceeding.  *See* Tex. Civ. Prac. & Rem. Code § 31.002(e).  A receiver's fees are considered court costs, and a trial court may award reasonable receiver's fees.  *Vaccaro v. Raymond James & Assocs.*, 655 S.W.3d 485, 490 (Tex. App.—Fort Worth 2022, no pet.).  Whether a receiver's fee is reasonable is determined by the value of the receiver's services, including the receiver's results.[11]  *See Moyer v. Moyer*, 183 S.W.3d 48, 57 (Tex. App.—Austin 2005, no pet.) (citing *Bergeron*, 561 S.W.2d at 553; *B.B.M.M., Ltd. v. Tex. Commerce Bank-Chem.*, 777 S.W.2d 193, 198 (Tex. App.—Houston [14th

---

[11] Factors courts generally consider in determining whether a receiver's fee is reasonable include:  (1) the nature, extent, and value of the administered estate; (2) the complexity and difficulty of the work; (3) the time spent; (4) the knowledge, experience, labor, and skill required of or devoted by the receiver; (5) the diligence and thoroughness displayed; and (6) the results accomplished.  *Allstate Cnty. Mut. Ins. Co. v. Hill*, No. 02-22-00261-CV, 2023 WL 3113951, at *4 (Tex. App.—Fort Worth Apr. 27, 2023, no pet. h.) (mem. op.) (citing *Bergeron v. Sessions*, 561 S.W.2d 553, 554-55 (Tex. App.—Dallas 1977, writ ref'd n.r.e.)).

Dist.] 1989, no pet.)); *see also Congleton v. Shoemaker*, Nos. 09-11-00453-CV, 09-11-00654-CV, 2012 WL 1249406, at *5 (Tex. App.—Beaumont Apr. 12, 2012, pet. denied) (mem. op.).

> The turnover order provides the following regarding receiver's fees:

> [I]t is hereby ordered that Receiver pay himself as receiver's fees an amount equal to twenty-five percent of all proceeds coming into his possession, which the court finds is fair, reasonable, and necessary fee for the Receiver, and is further directed and authorized to pay Applicants' attorney as Trustee for the Applicants the remaining 75% of all proceeds coming into Receiver's possession. No receiver's fee exceeding 25% of all proceeds coming into his possession shall be paid to the Receiver unless an application is filed with and approved by this court with notice and opportunity for hearing granted for Applicant and Respondent.

The plain language of the order indicates that at the time the order was signed, the court made a final determination that a twenty-five percent fee would be reasonable. *See Moyer*, 183 S.W.3d at 57.

However, there must be some evidence in the record to establish the reasonableness of the fee at the time a fee is awarded. *See Congleton*, 2012 WL 12494065, at *5; *Moyer*, 183 S.W.3d at 58. LuxeYard requested receiver's fees in the motion for turnover relief and attached O'Neal's resume. However, LuxeYard presented no other evidence on the relevant factors. Prior to the order granting turnover relief and appointing a receiver, Mr. O'Neal had not performed any receivership work. At this early stage in the turnover proceedings, the record contains no evidence establishing what percentage or amount constitutes a fair, reasonable, or necessary receiver's fee, such as the complexity and difficulty of the work the receiver performed, the time spent, the diligence or thoroughness displayed, or the results accomplished. *E.g.*, *Allstate Cnty Mut. Ins. Co.*, 2023 WL 3113951, at *4 (citing *Bergeron*, 561 S.W.3d at 554). Without this evidence yet

16

available, the trial court abused its discretion by setting the receiver's fee at a blanket twenty-five percent. *Accord Congleton*, 2012 WL 1249406, at *5; *Moyer*, 183 S.W.3d at 57-58.

We sustain Klinek's second issue.

## Conclusion

We sustain in part, and overrule in part, Klinek's first issue challenging the sufficiency of the evidence to support the turnover order. We sustain Klinek's second issue challenging the receiver's fee. Accordingly, we affirm as modified in part and reverse in part. We remand to the trial court for proceedings consistent with this opinion.

/s/    Kevin Jewell
       Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Hassan.